THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* HUGH
MULLIGAN, Appellant.

First Department, December 7, 1972.

*Herald Price Fahringer* of counsel (*Lawrence A. Schulz* with
him on the brief; *Lipsitz, Green, Fahringer, Roll, Schuller &
James,* attorneys), for appellant.

*Lewis R. Friedman* of counsel (*Michael R. Juviler* with him
on the brief; *Frank S. Hogan, District Attorney*), for respondent.

MURPHY, J.    Defendant appeals from a judgment convicting
him, after a jury trial, of 12 counts of criminal contempt.

In October, 1970, Mulligan was called, as a witness, before a
New York County Grand Jury which was then conducting a
complex investigation into alleged violations of the gambling
laws and bribery of police officers.  He was advised that the
Grand Jury was interested in him solely as a witness and that it
had voted to grant him immunity.  Nevertheless, he refused to
answer any questions, asserting his constitutional privilege

against self incrimination. Defendant was thereupon indicted for criminal contempt of a Grand Jury. (Penal Law, § 215.51.) His contentions that the indictment was defective because of improper advice as to the scope of the immunity granted and for other reasons were finally rejected by the Court of Appeals. (*People* v. *Mulligan,* 29 N Y 2d 20.)

Prior to trial on the reinstated indictment, defendant was served with notice by the District Attorney, pursuant to section 822 of the Code of Criminal Procedure (now CPL 700.50) that he had been the subject of electronic surveillance. He thereupon moved, *inter alia,* for an evidentiary hearing on the legality of the eavesdropping. The Trial Justice summarily denied the request on the grounds that the electronic surveillance here in issue was judicially supervised and, in any event, could not be the subject of inquiry by a Grand Jury witness.

The principal question presented on this appeal is whether this determination is sound in light of the recent decision of the Supreme Court in *Gelbard* v. *United States* (408 U. S. 41). We do not believe that it is.

Initially, we note that the New York eavesdropping statutes were intended, when enacted, to harmonize State law on electronic surveillance with Federal law. (See Governor's Memorandum on an approval of L. 1969, ch 1147, N. Y. Legis. Annual, 1969, p. 586.)

The narrow question presented in *Gelbard* was whether a witness before a Federal Grand Jury who refused to testify because his interrogation would be based on unlawfully intercepted communications, may invoke the prohibition of the Federal statute (U. S. Code, tit. 18, § 2515) as a defense to a civil contempt charge. The majority held that he may. However, as Justice White noted in his concurring opinion, the issue as to whether a regular suppression hearing may be had during the Grand Jury proceedings when a court order is produced was specifically left open for further consideration.

In *Cali* v. *United States* (464 F. 2d 475) the court construed the *Gelbard* decision and the language and legislative history of the applicable Federal statutes and concluded that, whatever rights a witness may otherwise have in defense to a contempt proceeding, he cannot move to suppress evidence before a Grand Jury. The rationale for such a holding is that a balance must be struck between the due functioning of the Grand Jury system and a defendant's rights under the eavesdropping statutes. We would agree that grand jury proceedings should not be interrupted by protracted suppression hearings. (Cf. *People* v.

*Costello,* 21 N Y 2d 967.) Accordingly, if the defendant herein had moved for such relief when he was a witness, it could not have been properly granted.

The People now contend, however, that even though defendant could not have obtained a full-blown suppression hearing during the Grand Jury proceedings, he is precluded from now obtaining it because, unlike the witnesses in the *Gelbard* cases, he failed to object to the source of the questions at his Grand Jury appearance. The short answer to this argument is that defendant was not formally apprised that certain electronic eavesdropping had occurred until after he appeared before the Grand Jury and after he had been indicted. A Grand Jury witness who, as above noted, cannot move to suppress evidence in that proceeding, should not be required to speculate as to the source of the questions propounded or to anticipate a criminal contempt indictment. On the contrary, he is entitled to await the formal accusation and service of the required notice before moving for appropriate relief. It is only then that an inquiry could be appropriately made as to whether or not the questions asked by the Grand Jury were based on information acquired as the result of an improperly issued electronic surveillance order. And if they were, then this defendant cannot be convicted for his refusal " to answer any legal and proper interrogatory ". (Penal Law, § 215.51.)

The other asserted ground for denial of the suppression motion was that the surveillance in this case was conducted under judicial supervision and pursuant to rigid statutory requirements. The mere fact that the People have obtained judicial permission to eavesdrop does not, however, preclude a person being prosecuted criminally from contesting the validity of such permission. To rule otherwise would be tantamount " to saying that any search warrant or order for interception is all right if a Judge has seen fit to sign it " (*People* v. *McCall,* 17 N Y 2d 152, 159). This, of course, is not the law of this State. (*People* v. *McCall, supra; Matter of Sarisohn,* 21 N Y 2d 36.) Accordingly, we hold that defendant is entitled to an evidentiary hearing to test the validity of the eavesdropping warrant and that his motion for such hearing should have been granted.

Another asserted error raised on this appeal is the trial court's charge to the jury that no inferences should be drawn from defendant's failure to testify. This instruction was given pursuant to section 393 of the former Code of Criminal Procedure. However, since this trial was held in September, 1971, CPL 300.10 (subd. 2) was applicable. That section provides, in per-

tinent part: " Upon request of a defendant who did not testify in his own behalf, but not otherwise, the court must state that the fact that he did not testify is not a factor from which any infer- ence unfavorable to the defendant may be drawn. "

An exception was duly taken. However, it appears that both the trial court and defense counsel mistakenly believed that defendant's attorney, in his summation, had alluded to the absence of any obligation on the part of defendant to testify. in his own behalf; and that when the Trial Justice stated, during summation by the prosecutor, that he would charge the jury that defendant was under no obligation to offer any evidence in his defense, counsel for defendant acquiesced. Although the language of the statute would seem to leave no discretion to the trial court, the prejudicial effect of giving or failing to give the charge is still debated among Bench and Bar. (Cf. *United States* v. *Garguilo,* 310 F. 2d 249, 252.) In any event, under the circumstances of this case we deem the error harmless.

In light of the foregoing, and since we find no merit in appel- lant's other assignments of error, the determination of this appeal should be withheld and the case remitted for a hearing in accordance with the provisions of article 710 of the CPL, on the question of whether the eavesdropping warrants were prop- erly issued. (Cf. *People* v. *McDonnell,* 18 N Y 2d 509.)

EAGER, J. (dissenting in part). I would expressly limit the scope of the remission to a hearing to determine whether there existed warrants of proper form and content authorizing the electronic surveillance involved here and whether such warrants are prima facie supported by proper affidavits or proofs and were properly executed. It is noted that the decision of the Supreme Court in *Gelbard* v. *United States* (408 U. S. 41), was rendered on the assumption that the " communications were not intercepted in accordance with the specified procedures and thus that the witnesses' potential testimony would be 'disclosure' in violation of [law] " (p. 47). The court then noted that " we need not decide whether Gelbard and Parnas may refuse to answer questions if the interceptions   *   *   *   were pursuant to court order." (p. 61, n. 22). Furthermore, Mr. Justice WHITE, in concurring, stated that he agreed " that at least where the United States has intercepted communications *without a warrant in circumstances where court approval was required,* it is appro- priate in construing and applying 28 U. S. C. § 1826 not to require the Grand Jury witness to answer and hence further the plain policy of the wiretap statute " (p. 70; emphasis added).

Bearing in mind the circumstances of the particular crimes charged and on the record upon which the conviction was based, the determination of this appeal should depend on whether the electronic surveillance was authorized by duly issued warrants. I see no justification for a full evidentiary suppression hearing including the issue of probable cause.

STEVENS, P. J., McGIVERN and NUNEZ, JJ., concur with MURPHY, J.; EAGER, J., dissents in part in an opinion.

Determination of appeal from judgment, Supreme Court, New York County, rendered on December 16, 1971, withheld, and the case remitted for a hearing in accordance with the provisions of article 710 of the CPL, on the question of whether the eavesdropping warrants were properly issued. (Cf. *People* v. *McDonnell*, 18 N Y 2d 509.)