Burton B. Roberts, J.
Defendant Gerald Einhorn testified at this nonjury trial before me for four counts of criminal contempt (Penal Law, § 215.51) that prior to receiving a subpoena to appear before the Grand Jury in question, he encountered his long-time friend and bookmaker, Philip Sherbert. According to Einhorn, Sherbert advised him of the fact that he had been arrested and that he suspected that wiretaps had been utilized. He then cautioned Einhorn that Einhorn’s calls to him may have been intercepted and that he might therefore be brought before a Grand Jury. As a result of this conversation, Einhorn testified, he consulted a lawyer and, when in fact questioned before the Grand Jury, “ did what my counsel advised me and read the paragraph he gave me to read ”, to wit: “ Upon advice of counsel, I respectfully decline to answer any questions, based upon my privilege not to testify because my testimony would constitute a disclosure of the contents or fruits of an illegal electronic surveillance.”
On cross-examination, Einhorn conceded that he understood at the time he appeared, before the Grand Jury that if he wished to answer the questions he had a right to do so. He also stated that he refused to answer them knowing the consequences, i.e., that he “ could be indicted ”,
*959 The other evidence at the trial revealed that on January 26, 1972, as a result of a series of court-ordered wiretaps on the telephones of a group of bookmaking “ wire rooms ”, defendant was called before a quorum of a lawfully-constituted Grand Jury investigating illegal gambling and criminal usury and was duly sworn. After being informed of the nature and scope of the proceedings and told that by testifying he would receive full testimonial and transactional immunity, and after consulting with his attorney present outside the Grand Jury room, Einhorn stated that he understood the offered immunity and the meaning of perjury and contempt. He then proceeded to meet each substantive question posed to him with the above-quoted statement. Four of these questions, each stipulated to have been derived from information obtained as a result of the aforementioned wiretaps, form the basis for the counts of the indictment, to wit:
“ Q. Mr. Einhorn, were you and Philip Sherbert partners in a bookmaking scheme and operation which grossed in excess of thirty-five million dollars a year? ” (First count).
“Q. Mr. Einhorn, did you, during the month of December, 1971, have occasion to borrow money from an individual, not licensed to lend money, at a rate exceeding twenty-five per cent per annum? ” (Second count).
“ Q. Mr. Einhorn, did you have occasion to ask Martin Kahn to transmit the line on various sporting contests to you and to Philip Sherbert ? ” (Third count).
“ Q. Mr. Einhorn, did you profit from a bookmaking scheme and enterprise by knowing, in advance of certain games being played, that those games were to be fixed and were to have a certain outcome ? ’ ’ (Fourth count).
Prior to trial, defendant moved to suppress evidence of his refusal to answer questions before the G-rand Jury on the ground that the questions were the product of illegal eavesdropping. No factual issues having been raised by defendant’s moving papers, this court examined the wiretap orders (People v. Glen, 30 N Y 2d 252) and determined that they were properly issued based upon sufficient probable cause.
Defendant now moves for a dismissal of the indictment or a verdict of acquittal. He argues that his trial testimony, if believed, established that his refusal to answer questions before the Grand Jury was without the requisite criminal intent because said refusal was on advice of counsel, which advice, it is claimed, was made in good faith based upon the then recently-decided “ Sister Egan ” case (Matter of Egan, 450 F. 2d 199 [3d Cir., 1971], affd. sub nom. Gelbard v. United States, 408 U. S. 41).
*960 It is clear, however, that it constitutes no defense to a criminal contempt prosecution that the refusal to testify was based upon a good faith belief that the questions were improper (People v. Berson, 308 N. Y. 918) or privileged (see People v. Newman, 40 A D 2d 633, revd. other grounds 32 NY 2d 379). Similarly,, it is no defense that the contemnor acted in good faith in reliance upon the advice of counsel that his Fifth Amendment rights were being violated (Matter of Grand Jury [Cioffi], 10 A D 2d 425, affd. 8 N Y 2d 220; Matter of Anonymous v. Arkwright, 5 A D 2d 790; see People v. Colombo, 32 A D 2d 812, affd. 25 N Y 2d 641, vacated other grounds 400 U. S. 16).
Thus, it is apparent that the only state of mind required for conviction of this crime is an intentional refusal to answer questions (cf. People v. Renaghan, 40 A D 2d 150), which was clearly present in this case. A witness who urges legal grounds for refusing to answer questions does so at his peril.
The fact that the rights raised are Fourth Amendment rights does not change this scheme. The First Department has recently held, based upon Gelbard v. United States (408 U. S. 41, supra) and upon Matter of Cali v. United States (464 F. 2d 475) that the ‘ ‘ balance [which] must be struck between the due functioning of the Grand Jury system and a defendant’s rights under the eavesdropping statutes ” requires that a Grand Jury witness who refuses to testify on Fourth Amendment grounds must await a contempt indictment and rest his claim on the outcome of a pretrial motion to suppress (People v. Mulligan, 40 A D 2d 165, 166-167, supra).
Such a s ‘ Hobson’s choice ’ ’ is the very nature of the contempt sanction. The power of the Grand Jury to compel testimony is of such paramount importance (People v. Zweig, 32 A D 2d 569; People v. Woodruff, 26 A D 2d 236, affd. 21 N Y 2d 848) that the law requires one who would oppose it to be prepared to stand the hazard of his guess.
Any potential for unfairness that might be inherent in this proposition is not present here. Einhorn’s testimony reveals that he had no factual basis whatsoever for believing that illegal eavesdropping was employed against him and that he had only Sherbert’s suspicions as reason for believing that eavesdropping was used at all. His position before the Grand Jury, therefore, was strictly a gamble. Matter of Egan, 450 F. 2d 199 (supra), which held that a witness before a Federal Grand Jury who refused to testify because his interrogation would be based on unlawfully intercepted communications may invoke the prohibition of the Federal statute (U. S. Code, tit. 18, § 2515) a$ a *961 defense to a civil contempt charge, was nothing more than the inspiration for taking this “ shot in the dark
In the proper case a bona fide reliance on the advice of counsel which has been founded upon some good faith basis may be considered in mitigation of punishment (17 C. J. S., Contempt, § 38). While the claimed reliance on the advice of counsel in this case appears to be merely a ploy by which defendant, having no grounds for a successful motion to suppress, could argue, “ heads I win, tails you lose ”, this court is prepared to hold a presentence conference (CPL 400.10) if defendant requests one to explore the circumstances of this advice and defendant’s reliance upon it.
The motion to dismiss is denied and defendant is found guilty as charged.