THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* GERALD EINHORN, Appellant.

First Department, June 13, 1974.

*Stanley M. Meyer* of counsel (*Preminger, Meyer & Light,* attorneys), for appellant.

*Lewis R. Friedman* of counsel (*Robert A. Goldschlag* with him on the brief; *Richard H. Kuh, District Attorney*), for respondent.

CAPOZZOLI, J.  The majority is in full accord with our distinguished colleague in his dissent, insofar as he concludes that a witness before the Grand Jury, who refuses to answer questions put to him, may not escape the consequences of his refusal merely because he relied upon the advice given to him by his attorney.  We concede that this is out of the case.

We agree, too, that a witness is not entitled to a suppression hearing in the course of the grand jury inquiry, if a court order authorizing wiretapping is produced.  (*Cali* v. *United States,* 464 F. 2d 475; *Matter of Persico,* 491 F. 2d 1156 [2 Cir., 1974]; *Matter of George,* 74 Misc 2d 359.)

The one issue which is presented in this case, which must be resolved, is whether it was proper for the Grand Jury to direct the defendant, then appearing before it as a witness, to answer questions put to him, despite his claim that the testimony sought would constitute a disclosure of the contents or fruits of illegal electronic surveillance.

In *People* v. *Mulligan* (40 A D 2d 165, 166) we held " that the New York eavesdropping statutes were intended, when enacted,

to harmonize State law on electronic surveillance with Federal law ''. Therefore, it is important to examine the Federal cases, which have concerned themselves with this particular subject.

In *Gelbard* v. *United States* (408 U. S. 41) it was held that, in contempt proceedings based upon a failure to obey a court order to answer a question before a grand jury, the witness refusing to give the testimony may avail himself of the defense that the question propounded violates section 2515 of title 18 of the United States Code, which directs that: '' Whenever any wire or oral communication has been intercepted, no part of the contents of such communication and no evidence derived therefrom may be received in evidence in any   *   *   *   proceeding in or before any   *   *   *   grand jury   *   *   *   if the disclosure of that information would be in violation of this chapter.''

The court also called attention to section 3504 of title 18 of the United States Code which was enacted as part of the Organized Crime Control Act of 1970 (84 U. S. Stat. 935). This last-cited section provides: '' (a) In any   *   *   *   proceeding in or before any   *   *   *   grand jury   *   *   *   (1) upon a claim by a party aggrieved that evidence is inadmissible because it is the primary product of an unlawful act or because it was obtained by the exploitation of an unlawful act, the opponent of the claim shall affirm or deny the occurrence of the alleged unlawful act ''.

In discussing the effect of section 2515 the court, in *Gelbard* (*supra*, pp. 54–55) said: '' grand jury witnesses may rely upon the prohibition of § 2515 in claiming that the evidence sought from them is inadmissible in the grand jury proceedings. Upon such a claim by a grand jury witness, the Government, as ' the opponent of the claim,' is required under § 3504(a)(1) to ' affirm or deny the occurrence of the alleged ' illegal interception.''

Later (p. 58) the court said: '' ' the opponent of the claim ' has a duty to ' affirm or deny' whenever ' a party aggrieved ' ' claim[s]   *   *   *   that evidence is inadmissible because it is ' derived from an illegal interception ''.

In the case at bar the record shows that the defendant made it very clear that his refusal to answer questions put to him was '' because my testimony would constitute a disclosure of the contents or fruits of an illegal electronic surveillance ''. Any fair-minded person must admit that this language served notice upon all concerned that the defendant was relying upon the prohibition of section 2515 and was raising a claim that the evidence sought from him was inadmissible in grand jury proceedings.

Once he raised that claim, it was the duty of the People to " ' affirm or deny the occurrence of the alleged ' illegal inter-. ception ". (*Gelbard* v. *United States, supra.*) The trial court was in error when it intimated in its decision that the defendant acted at his peril in trying to guess what the facts were. He was entitled to more than a guess. He was entitled to truthful information as to whether the questions asked of him were or were not based on illegal wiretaps and it was the duty of the People to furnish that information before the grand jury.

How much more reasonable and fair were the proceedings in *Matter of Persico (supra)*. In that case the defendant refused to answer on constitutional grounds and he was granted immunity. Then, after answering several questions, he refused to answer other questions, claiming that they were derived from electronic surveillance, which he claimed was illegal. The Government, in obedience to the holding in *Gelbard* v. *United States (supra)*, admitted that the line of questioning before the Grand Jury was a product of an electronic interception. However, it represented that such interception was conducted under proper court orders and fulfilled the requirements of Federal law pertaining to authorized wiretapping. These orders were produced before District Judge JUDD, who inspected them *in camera,* found them to be proper and ordered the defendant to testify. The latter then moved for a suppression hearing to test the legality of the orders and this was properly denied him. As was stated by Mr. Justice WHITE, in his concurring opinion in *Gelbard* v. *United States (supra,* p. 70) : " Suppression hearings in these circumstances would result in protracted interruption of grand jury proceedings."

The Circuit Court, in *Matter of Persico (supra)* following *Gelbard* v. *United States* (491 F. 2d 1156, 1159–1160, *supra*) said : " The apparently ample breadth of this proscription [2515] has been confirmed by Gelbard v. United States, *supra.* In that case the Supreme Court held that in contempt proceedings * * * for failure to obey a court order to answer a question before a grand jury, the witness refusing to give the testimony may avail himself of the defense that the question propounded to him violates § 2515. * * * Insofar as *Gelbard* permits a grand jury witness to refuse to answer a question derived from concededly unlawful electronic surveillance and then successfully to defend a contempt proceeding for so refusing, we agree with appellant. *Gelbard* does indeed govern that narrow situation."

Further, it said (p. 1161): "As noted, though Congress prescribed that illegal wiretap evidence must be excluded from all grand jury proceedings, hearings to suppress evidence were not to be permitted during such proceedings."

The court concluded (p. 1162): "We hold that in contempt proceedings initiated when a witness who has been granted 'derivative use' immunity refuses to answer questions propounded by a grand jury because he claims he is entitled to a hearing to ascertain whether the questions posed are the product of unlawful electronic surveillance the witness is not entitled to a plenary suppression hearing to test the legality of that surveillance. We hold that the refusal would be permissible only if there is an absence of a necessary court order or * * *. Here there were three court orders. Inasmuch as Judge JUDD conducted an in camera inspection to ascertain whether they complied with the statute and found that they did comply, Persico received all that he was entitled to receive." We especially emphasize the language just quoted, that "Persico received all that he was entitled to receive". In other words, Persico had a right to claim a violation of the wiretap statute. That claim was met by the Government's admission that it had conducted wiretapping and that it was done pursuant to court orders. Those court orders were then produced and, upon inspection by the District Judge, they were found to be in compliance with statutory requirements and Persico was directed to answer. Compare this procedure with the procedure followed in the case at bar. Here, the Assistant District Attorney became the adviser of the defendant. He expected the defendant to follow his advice, at the same time withholding from him that wiretapping had taken place, pursuant to court orders. No one thought of bringing this defendant before a Judge who might have directed the People to affirm or deny the claim asserted by him, as was done in *Persico*. If that had occurred, the defendant and his counsel would then have known exactly what they were up against. They would have learned that there were court orders authorizing wiretapping and, if defendant then failed to answer the questions put to him, he properly could face contempt action. Under those circumstances the defendant would have been able to make an informed choice. Instead, the People now try to defend their action by making the unreasonable assertion that the defendant should have made a guess and, if he failed to guess properly, it was at his peril.

Let us examine the facts in *Matter of George* (74 Misc 2d 359, 360, *supra*). In that case the court was faced with the very

situation presented in the case at bar. The defendant and his attorney argued that the witness, George, refused to testify on the ground " that his client believed that the basis for questions put to him could be found in intercepted telephonic communications in which his client was a participant ". The Disrict Attorney conceded that electronic eavesdropping was utilized and handed court orders to the court, Mr. Justice BIRNS, for inspection. The court found the orders to be proper and directed the witness to answer, at the same time properly denying the witness' motion for a suppression hearing. The problem was handled exactly as the Federal cases, *supra*, direct. There was no guesswork expected of the witness. He was properly informed and would have acted at his peril if he did not comply with the order directing him to testify.

To say that no harm can come to the witness who faces such a crucial decision, because he can always have a suppression hearing in conjunction with his trial for contempt, is to overlook the fact that the time for the witness to have the information which, according to Federal law he is entitled to have, is during the grand jury proceedings, when he is to make his choice as to whether he will or will not answer questions propounded to him. If we agree that the witness has the right to decline to answer questions based on illegal wiretapping, then how can that witness know whether the wiretap is legal or illegal if the People refuse to tell him whether wiretaps were used at all?

It is unfortunate that our dissenting colleague fails " to see by what right a witness who is not a target of the investigation and who has been granted full immunity can question the source of the information which prompted the questions put to him ". We believe that this language does not really express his failure to see, but rather his disagreement with the law discussed herein, which gives a witness that right.

We conclude that the judgment of conviction should be reversed, on the law, and the indictment dismissed.

STEUER, J. (dissenting). On January 26, 1972, defendant was called before a Grand Jury investigating gambling and criminal usury. He was not the target of investigation and full immunity had been conferred on him. Yet the defendant refused to answer all questions put to him on the stated ground that he was privileged not to testify because his testimony " would constitute a disclosure of the contents or fruits of illegal electronic surveillance." What defendant was referring to was that the prosecution had obtained the information on which the ques-

tions were based as a result of telephonic wiretaps. This was true.

Defendant's first contention is that he was advised by counsel that he had a constitutional right to decline to answer, and that, regardless of whether the advice was sound or not, his refusal lacked the intent to be contumacious. What this amounts to is that a witness who has sufficient sophistication to find a lawyer who will advise him that he need not answer is immune from the consequences of defying the grand jury and may freely disobey the court's direction to answer. Such is not and never was the law (*Matter of Grand Jury* [*Cioffi*], 10 A D 2d 425, affd. 8 N Y 2d 220).

Defendant's second contention upon which the majority rests is by way of extension of what was decided by the United States Court of Appeals, Second Circuit, in *Matter of Persico* (491 F. 2d 1156). There the court held that a witness who refused to answer on the same grounds was in contempt and was not entitled to a plenary suspension hearing unless there was no court order, or the prosecution conceded that the surveillance was illegal, or there was a prior judicial determination to that effect. Here, there was a court order (in fact, there were three such orders), there was no concession, and there was no prior judicial determination. The majority apparently bases its reversal on the fact that the District Attorney never advised the defendant that there were such orders, and extends the *Persico* doctrine to mandate such disclosure. To me this appears entirely unjustified. Assuming that *Persico* represents an incontestible statement of the applicable law, it is first to be noted that a witness is not entitled to a suppression hearing in the course of the grand jury inquiry unless one of the three stated exceptions appears. It is inconceivable that it would be the burden of the prosecution to prove the negative of these exceptions. The one claiming the extraordinary right should have some grounds for its assertion. What the majority says is that the failure of the prosecution to advise him that grounds do not exist is the equivalent of there being grounds.

Actually, under our practice the witness, before he can be found guilty of contempt, can at his trial test the validity of the method by which the prosecution obtained its information. He may make a pretrial motion to suppress (*People* v. *Mulligan*, 40 A D 2d 165). This procedure was availed of by this defendant, and it was found that the surveillance was perfectly proper.

It would appear therefore that the conviction was in all respects proper, even under the prevailing views as to witnesses'

rights in grand jury investigations. This does not mean that I subscribe to those views. I fail to see by what right a witness who is not a target of the investigation and who has been granted full immunity can question the source of the information which prompted the questions put to him. If another is indicted as a result of his testimony, that person can raise any question as to the propriety of the evidence. Nothing in our law that I am aware of constitutes the witness a guardian of some third person's rights and enables him to assert them. No right of his own is being infringed.

The judgment of conviction should be affirmed.

MARKEWICH, J. P., MURPHY and TILZER, JJ., concur with CAPOZZOLI, J.; STEUER, J., dissents in an opinion.

Judgment, Supreme Court, New York County, rendered on September 11, 1973, reversed, on the law, and the indictment dismissed.