George F. Roberts, J.
Defendant was indicted on January 16, 1973 for the crime of criminal contempt in the first degree, a violation of section 215.51 of the Penal Law, as the result of his appearance before a Grand Jury investigating the predawn slaying of Joseph Gallo at Umberto’s Clam House on April 7, 1972. Testimony elicited before the Grand Jury indicated that certain persons allegedly connected with the "Colombo crime faction” were hiding out inside an apartment located at 101 Gedney Street in Nyack, New York, and the defendant was charged with unlawfully refusing to respond to inquiries concerning whether he had visited these premises and whether he had spoken with a certain named individual there.
The defendant now moves to dismiss the indictment against him pursuant to People v Einhorn (35 NY2d 948), on the ground that the prosecutor questioning him in the Grand Jury did not comply with his request to be taken before the court after he had raised the claim of illegal electronic surveillance.[1]
In Einhorn, the defendant, during his appearance as a witness in a Grand Jury proceeding, had refused to answer questions on the ground that they were the product of illegal eavesdropping. The Appellate Division reversed his conviction for contempt, holding that the prosecutor questioning him before the Grand Jury had the duty to affirm or deny the occurrence of the alleged illegal interception, citing Gelbard v United States (408 US 41). (People v Einhorn, 45 AD2d 75, revg 74 Misc 2d 958.) The Court of Appeals, however, reinstated the conviction, holding that "when the witness raises the objection during the Grand Jury proceeding, unless he requests to be brought before the court, the prosecutor is not obligated to affirm or deny the underlying facts” (People v Einhorn, 35 NY2d 948, 949, supra). The court further stated (pp 949-950) that in such case: "[t]he request during the *412 Grand Jury proceeding by the witness that he be brought before the court must be respected and once there the Presiding Justice may make appropriate inquiry whether the witness’ objection is sound. In the course of that inquiry, the court, may, in its discretion interrogate the prosecutor under oath, either in camera, or in open court, whether or not the basis for the questioning of the witness was founded on the illegally obtained wiretap evidence.”
In the instant case, the defendant was subpoenaed before the Grand Jury. Prior to his appearance before that body, he moved to quash the subpoena on the ground that the questions to be asked of him were the product of unlawful electronic eavesdropping. At the hearing on the motion, the District Attorney affirmed in open court that electronic surveillance pursuant to court order had been employed. The court then directed him to testify. The defendant then appeared before the Grand Jury and immediately began engaging in an attempt to delay and disrupt the proceedings. Having been granted transactional immunity, he proceeded to be generally unresponsive and recalcitrant, making repeated requests to confer with his attorney and doing so after nearly every question. Nonetheless, the defendant did not refer to the matter of electronic surveillance until his testimony was well advanced and not until after he had been permitted to leave the room on a number of occasions to seek counsel with his lawyer.
Defendant’s reliance on Einhorn amounts to the proposition that a Grand Jury witness who raises the claim of illegal electronic surveillance has an absolute right to be taken before the court regardless of what else has previously transpired. Such reliance is misplaced under the facts of this case, which presents a situation not contemplated by the Court of Appeals in Einhorn. Einhorn purports to deal with an occasion where the prosecutor stands mute on the existence of illegal electronic surveillance and, in effect, holds that such silence, pregnant with suspicion, requires judicial inquiry if the witness so requests.
But where, as here, the District Attorney has already answered the crucial question as to electronic surveillance before the witness in open court prior to the appearance before the Grand Jury, and the court has not seen fit to make further inquiry, there is no purpose to be served by interrupting the proceedings for a further appearance before the Judge. Any *413 subsequent trips to the courtroom serve only to delay and disrupt. Indeed, this was arguably the defendant’s motive in making such a request after having left the Grand Jury room yet another time to confer with his attorney. See People v Ianniello (21 NY2d 418) and People v Ward (37 AD2d 174), which provide that there is no right to consultation in the midst of Grand Jury testimony for strategic, as opposed to legal, advice; and clearly the right to counsel may not be invoked as a pretext to hinder the proceedings.
The defendant’s contention that the indictment must be dismissed because it was returned by the same Grand Jury before which the contempt was allegedly committed is without merit (People v Mulligan, 29 NY2d 20; People v Chestnut, 26 NY2d 481).
For all of the foregoing reasons, the defendant’s motion is denied.
This constitutes the order and opinion of the court.

. A similar motion before Mr. Justice Culkin was denied on October 4, 1974, prior to the decision by the Court of Appeals in Einhorn (supra). This court is of the opinion that the issues raised in the instant application warrant further clarification in view of the Einhorn case.