In the Matter of MICHAEL L. SANTANGELLO, Appellant, v THE PEOPLE OF THE STATE OF NEW YORK, Respondent.

First Department, October 23, 1975

*Barry I. Slotnick* for appellant.

*Bennett L. Gershman* of counsel *(Allen G. Swan* and *Joel Cohen* with him on the brief; *Maurice H. Nadjari,* attorney), for respondent.

NUNEZ, J. The Special New York State Prosecutor commenced an investigation to determine whether certain police officers accepted bribes in 1970 for the purpose of affecting the outcome of several major narcotic cases then pending in the New York State Supreme Court. The Extraordinary and Special Grand Jury received evidence that petitioner, a member of the Bar, had represented some of the defendants in the narcotic cases and had participated in the bribery of police officers. The information about the bribery came to the Special Prosecutor from the office of the United States Attorney for the Southern District of New York. A New York City police officer, Detective Carl Aquilez, implicated the petitioner during the Federal investigation which resulted in indictments

and convictions of several defendants. Subpoenaed before the Extraordinary Grand Jury, petitioner appeared on July 22, 1975, was granted immunity and gave testimony. During his appearance he requested to be advised whether he was the subject of illegal electronic surveillance and requested to be brought before the court. (See *People v Einhorn,* 35 NY2d 948.) Appearing before the court, petitioner's counsel requested the Presiding Justice to compel the prosecutor to state whether the questions asked the witness before the Grand Jury were the product of electronic surveillance by State or Federal officials. The court denied the application *in toto* and this appeal followed.

However, at a subsequent appearance before the court, held at the prosecutor's request following the granting of a stay of the proceedings by this court, the prosecutor informed petitioner that he was the subject of electronic eavesdropping by his, the prosecutor's, office but that none of the questions asked of him before the Grand Jury were based on such surveillance. The eavesdropping orders were thereupon shown to the court *in camera* and were found to have been issued (although not clear in this record, we presume they were issued by the same Justice) in accordance with law. The court again upheld the prosecutor in his refusal to comply with petitioner's request that Federal law enforcement agencies be contacted to determine whether the latter had conducted electronic surveillance of petitioner.

The Special Prosecutor, in opposing disclosure, informed the court that, as on at least 5 or 10 prior occasions, his office took the position that he should not be required to answer any inquiry with regard to eavesdropping operations since "the applicable law under Einhorn is that unless there has been a full showing by the witness before the grand jury, that he has been the subject of illegal electronic surveillance" there was no basis for any further inquiry of the prosecutor. And we note that at the time the prosecutor was insisting that the witness make a "full showing" of illegal surveillance, his office was, at the very moment, conducting an ongoing electronic surveillance of the witness. We do not agree that the case of *People v Einhorn,* either in this court (45 AD2d 75) or in the Court of Appeals (35 NY2d 948) requires a full showing of eavesdropping before the witness is entitled to know whether there has been eavesdropping. No such showing was made or required in *Einhorn.* This court held that the witness was

required only to make the claim of illegal wiretapping. The Court of Appeals agreed, but held that when the witness raises the objection during the Grand Jury proceeding, the prosecutor is not obligated to affirm or deny the underlying facts unless the witness requests to be brought before the court. Here the witness made such request. And in his attempt to show that petitioner's objection was sound, his counsel argued that it was not unreasonable for the witness to conclude that he had been the subject of such electronic surveillance based upon (1) the widespread use thereof by Federal agencies; (2) that he had been named a co-conspirator but unindicted by Federal authorities in a case which involved the same facts being presented to this Grand Jury; and (3) the dropping of a count in a Federal indictment in 1973 after an outright alibi defense had been discussed over his office telephone.

It is well established that a Grand Jury witness need not answer questions based on information obtained as a result of illegal wiretapping. *(People v Einhorn, supra;* CPL 190.65, subd 1, par [b]; US Code, tit 18, § 2515.) See, also, *Gelbard v United States* (408 US 41) where the court held that upon a claim by a Grand Jury witness that evidence is inadmissible because it is derived from an illegal interception, the Government is required to affirm or deny the occurrence of the alleged illegal interception. The prosecutor concedes that the investigation under which petitioner was called as a Grand Jury witness was Federally induced and Federally developed by the United States Attorney's office for the Southern District of New York. In view of the Federal Government's role in causing the State Grand Jury's investigation and the showing made by petitioner and in the interests of fairness, the prosecutor should make the requested inquiry of the Federal authorities. "Courts have a particular responsibility to prevent unfairness in Grand Jury proceedings, for the Grand Jury is an 'arm of the court' (see, e.g., *Matter of Spector v Allen,* 281 N. Y. 251, 260; *People v Pisanti,* 179 Misc. 308, 309)." *(People v Ianniello,* 21 NY2d 418, 424.)

We regret the necessity to observe that the assertion in the dissent, that if the order appealed from were not affirmed the appeal should be dismissed as moot because petitioner has received all the information that he is entitled to, is incorrect. The prosecutor did not answer the claim of illegal surveillance by the Federal authorities. He merely stated that after speak-

ing to several Assistant United States Attorneys, he represented to the court that his investigation of petitioner did not result from electronic eavesdropping, nor had any privileged attorney-client communication been intercepted. But that was not the claim made nor the information sought by petitioner. His claim was that he had been subjected to illegal surveillance by the Federal authorities. The Special Prosecutor refused to inquire of such authorities whether petitioner's claim was valid or not. On the contrary, he steadfastly refused to make such inquiry. Mr. Cohen, representing the Special Prosecutor, stated to the Presiding Justice: "I think we would be remiss if we were to go to a Federal Government in an entire different entity; I think it is whether or not we intercepted Mr. Santangello. I think this is a matter the Federal Government will have to take its own position on."

Accordingly, the order appealed from should be reversed and the Special Prosecutor directed to make an appropriate good faith inquiry of Federal law enforcement agencies whether Mr. Santangello has been the subject of, or overheard on, electronic surveillance, in accordance with the guidelines set forth by the Court of Appeals in *People v Cruz* (34 NY2d 362, 369–370).

The Special Prosecutor contends that this appeal should be dismissed as a nonappealable order in a criminal proceeding. However, petitioner is not a defendant in a criminal action or proceeding. He has not been arrested. No accusatory instrument has been filed against him. Hence, by definition, no criminal action or proceeding has been commenced (CPL 1.20, subds 16, 17, 18; General Construction Law, § 18-a). We hold that as a final order in a special proceeding affecting the substantial rights of petitioner, the order is appealable (CPLR 5701, subd [a], par 1). (See *Matter of District Attorney of Kings County v Angelo G.*, 48 AD2d 576 and cases therein cited.)

The order of the Extraordinary Term of the Supreme Court, New York County (MURTAGH, J.) entered on July 24, 1975 should be reversed on the law, without costs, and the Special New York State Prosecutor is directed to make appropriate inquiry of the Federal authorities whether the witness, Michael L. Santangello, has been overheard on electronic surveillance.

STEVENS, P. J. (dissenting). I dissent and would affirm. The order appealed from denied, *inter alia,* the petitioner's appli-

cation for a direction that the Special State Prosecutor make appropriate good faith inquiry of the United States Government through the offices of the United States Attorneys for the Southern and Eastern Districts of New York, as to whether petitioner, a Grand Jury witness who was granted immunity, had been overheard pursuant to legal or illegal electronic surveillance. Petitioner further sought a direction that the Special State Prosecutor disclose to the Justice Presiding whether the witness had been overheard or had been the subject of electronic surveillance by the office of the Special State Prosecutor, and requested the Justice to ascertain from the Special State Prosecutor, under oath, whether the product of illegal or other electronic surveillance was used or "is about to be used" before the Grand Jury.

The special investigation involved herein deals with crimes which took place between March and July, 1970 and the alleged participation of petitioner, an attorney, in efforts and plans to dispose corruptly of certain narcotics cases.

When the witness, pursuant to his request, was taken before the Justice presiding over the Extraordinary and Special Grand Jury, the Special Prosecutor assured the court that no questions asked of the witness were based on evidence illegally obtained by wiretapping on the part of the Special Prosecutor. Moreover, in response to a question as to the date of the alleged illegal interception, counsel for petitioner replied "that the wiretapping may have been the tail end of 1970 —the tail end of 1971. And the wiretap ran for a period of 18 months." Whereupon the prosecutor said, "Your Honor, the matter[s] under investigation involve particularly crimes which allegedly took place between December and July of 1970, preceding that illegal eavesdropping, alleged eavesdropping." Assuming the correctness of both representations the investigation underway obviously could not have been bottomed upon the claimed electronic surveillance. "A Grand Jury witness need not answer questions based on information obtained as the result of illegal wiretapping (US Code, tit. 18, § 2515)." *(People v Einhorn,* 35 NY2d 948, 949.) The *Einhorn* case noted that, once the witness is before the Presiding Justice, the Justice is vested with discretionary power to "make appropriate inquiry whether the witness' objection is sound" and "[i]n the course of that inquiry, the court, may, in its discretion interrogate the prosecutor under oath, either *in camera,* or in open court, whether or not the basis for the

questioning of the witness was founded on the illegally obtained wiretap evidence." *(People v Einhorn, supra,* pp 949–950.) The question then is whether, on this record, the Presiding Justice abused his discretion. In my opinion there is no clear showing of an abuse of discretion. There was no sufficient factual showing by petitioner to warrant the extensive relief sought.

*People v Cruz* (34 NY2d 362), relied upon by the majority, involved not a Grand Jury witness, but a defendant who claimed that wiretap evidence was being used against him at trial. The Court of Appeals (per JASEN, J.) noted "To use, without notice to the defendant, evidence derived from electronic surveillance is impermissible, even if the surveillance itself is legal. * * * Initially, at least, the defendant should have the burden of coming forward with the facts which reasonably lead him to believe that he or his counsel have been subjected to undisclosed electronic surveillance. * * * Upon a sufficient showing, it is then incumbent upon the People to affirm or deny the allegations." *(People v Cruz, supra,* p 369.) Generally, greater rights exist for criminal defendants than for Grand Jury witnesses (see *Matter of Mintzer,* 511 F2d 471).

On July 31, 1975, in a supplemental hearing before the Presiding Justice (the minutes of which are a part of this record), petitioner was informed that he had been electronically overheard by the Special Prosecutor's office pursuant to court-ordered surveillance (which orders the court examined *in camera* and found legal) and that petitioner had not been subjected to illegal electronic surveillance. The Special State Prosecutor reaffirmed what he had stated earlier in his affirmation in opposition to petitioner's application to this court for a stay of all proceedings. This, in substance, was that the Special Prosecutor had spoken to Assistant United States Attorneys, one each for the Southern and Eastern Districts of New York, and also to a former Assistant United States Attorney for the Southern District. It was then represented to the Presiding Justice that the Special Prosecutor's investigation of petitioner did not result from electronic eavesdropping nor had any privileged attorney-client communications been intercepted. Thus, if the order were not affirmed, the appeal should be dismissed as moot because petitioner has received all the information that he is entitled to receive.

Generally, a witness has no standing to suppress evidence

before a Grand Jury where such witness has been given immunity. However, as a witness defendant in a contempt proceeding he may assert the illegality of intercepted wire or oral communications *(Matter of Lochiatto,* 497 F2d 803), and possibly be entitled to discovery of certain related documents. But where there is a question derived from electronic surveillance under a court order, a witness defendant in a civil contempt proceeding who has been granted "use" and "derivative-use" immunity may not litigate the legality of that surveillance (see *Matter of Persico,* 491 F2d 1156; cf. *Matter of Mintzer,* 511 F2d 471, *supra).*

There is a substantial question whether this order is appealable as of right. (CPL 1.20, subd 18 defines a "Criminal proceeding" as "any proceeding which (a) constitutes a part of a criminal action *or* (b) occurs in a criminal court and *is related to a prospective,* pending or completed *criminal action,* either of this state or of any other jurisdiction, *or involves a criminal investigation."* (Emphasis supplied.) This is not to be confused with a "Criminal action" which commences with the filing of an accusatory instrument (CPL 1.20, subds 16 and 17). Absent a grant of leave to appeal, no appeal lies as of right to this court (CPL 450.10). Moreover, the order is interlocutory and such appeals serve to hinder and sometimes prevent Grand Jury investigations which should proceed as expeditiously as possible. *(United States v Calandra,* 414 US 338; *People v Mulligan,* 40 AD2d 165.)

MARKEWICH and CAPOZZOLI, JJ., concur with NUNEZ, J.; STEVENS, P. J., and KUPFERMAN, J., dissent in an opinion by STEVENS, P. J.

Order, Supreme Court, New York County, entered on July 24, 1975, reversed, on the law, without costs and without disbursements, and the Special New York State Prosecutor is directed to make appropriate inquiry of the Federal authorities whether the witness, Michael L. Santangello, has been overheard on electronic surveillance.