OPINION OF THE COURT
Rena K. Uviller, J.
The issue presented by this motion to controvert a search warrant is this: is a defendant at a suppression hearing entitled to the assistance of the prosecutor in learning whether he has been the subject of wiretapping, even though the People have given no notice of intention to use wiretap evidence at trial? Whether a defendant is entitled to such assistance and what showing he must make, if any, in order to acquire it, appear not to have been addressed by any reported State court opinion.
As a concomitant of their motion to controvert, the defendants in this case seek an order directing the People to inquire of New Jersey authorities whether or not the defendants have been subjected to electronic surveillance in New Jersey, and for the People to affirm or deny such surveillance. No notice has been served by the People that they intend to use any wiretap evidence at trial.
*439 The People oppose the motion to controvert and the order to inquire and report on the ground the defendants have failed to provide a sufficient basis for their assertion that they were tapped. Relying upon People v Cruz (34 NY2d 362), the People argue that “apart from defendants’ bare assertion of electronic surveillance by New Jersey authorities [the People] are presently unaware of any reason to believe that such surveillance has occurred. The People are not presently possessed of sufficient information to either affirm or deny defendants’ claim.”
The affidavit of Detective Joseph Mazzilli, upon which the search warrant in this case issued, states that as a result of a continuing investigation by the Manhattan South Public Morals Squad in Major Case No. 001-78, and in co-operation with New Jersey law enforcement agencies concerned with organized gambling, the affiant has been in communication with Detective Dennis Watson of the Middlesex, New Jersey, prosecutor’s office; that Detective Watson had previously provided affiant Mazzilli with information resulting in gambling convictions; that Detective Watson told the affiant that he, Watson, had a confidential informant who has been placing bets at two Manhattan telephone numbers. A check of these numbers led the affiant to a New York apartment where, listening from a common hallway, he heard two phones ringing; that the defendant who was known to the affiant as a convicted gambler, was observed leaving the premises on two occasions and that on one of these occasions the defendant had bookmaking records in his hand.
The defendants, skeptical of a confidential informant’s existence, allege that the information about the gambling operation came from wiretaps. Their affidavit, however, specifies no dates on which they were allegedly tapped. They state only that “in the past, the Public Morals Squad has made scores of arrests under major case #001-78” on the basis of information from New Jersey authorities, that “most *** of these arrests were accomplished as a result of wiretaps by the New Jersey State Police.” Further, that information from New Jersey wiretaps “is and was many times in the past conveyed to the New York authorities [and that] the ‘modus operandi’ of the New Jersey-New *440 York co-operative effort under case #001-78 has been and presumably continues to be the use by the New Jersey authorities of electronic surveillance.”
There is, in New York, no mechanism by which a defendant may learn whether he has been subjected to electronic surveillance unless the People intend to introduce the tapes, or evidence derived therefrom, at trial. If the People do intend to introduce such evidence at trial, they must, of course, furnish the defendant with a copy of the eavesdropping warrant and the accompanying application within 15 days of arraignment. (CPL 700.70.) Indeed, the tapes themselves must be provided to the defendant within 20 days of his demand. (CPL 240.20.) But if wiretapping has occurred and the People do not choose to rely upon it, there is no statutory vehicle through which the defense may learn of its occurrence. Moreover, there are no means of challenging the People’s representation that no trial evidence will be the fruit of a wiretap, legal or illegal.
People v Cruz (34 NY2d 362, supra), upon which the People rely, did not concern a defendant’s pretrial effort to learn of electronic surveillance. In Cruz, the defendant at trial asserted that the prosecutor’s cross-examination of the codefendant derived from information obtained through wiretapping of defense counsel’s telephone. The People denied this and submitted the prosecutor’s file for the trial court’s perusal, which apparently satisfied the trial court that no wiretapping had occurred.
The issue in Cruz was whether, in addition to the foregoing, a hearing should have been held to further probe the eavesdropping issue. In affirming the defendant’s conviction, the Court of Appeals held that in light of the prosecutor’s firm denial and the Judge’s review of his file, the court was not obliged to interrupt the trial to conduct a hearing.
The Court of Appeals went on to note, however, that defense allegations of use of evidence from undisclosed wiretaps, whether the taps are legal or illegal, “raise serious questions affecting the very integrity of the judicial process.” (34 NY2d, at p 369.) For that reason the court prescribed standards governing future cases where the defense raises allegations of this sort. The defendant, the Court of Appeals provided, has the burden of coming for *441 ward with considerable specificity as to the dates, times and telephone numbers involved in the alleged tapping, as well as “the facts * * * which allegedly link the suspected surveillance to the trial proceedings.” (34 NY2d, at p 369.) Thereupon the prosecutor must affirm or deny the allegations, identifying the law enforcement agencies and individuals contacted and the substance of the inquiries and the denials.
To be sure, the defense allegations of wiretapping in this case lack the specificity of those in Cruz. The claim here is little more than a broadside to the effect that “everybody knows” that New Jersey authorities wiretap anyone suspected of gambling. Nor is the People’s waffling response in this case a model of specificity.
Although neither the defendants’ claim nor the People’s response measure up to Cruz guidelines, those instructive standards are not apposite here for two reasons. First, as noted earlier, the People in Cruz unequivocally denied the wiretapping allegations and satisfied the court on that score by submitting their file for perusal; the Cruz standards thus relate to the showing required before the defense is entitled, in addition, to an evidentiary hearing. (Cf. People v Grieco, 94 Misc 2d 1043.) Here we are concerned only with what showing, if any, is required to trigger the prosecutor’s preliminary inquiry and report.
Second, Cruz related to a wiretapping claim raised at trial and did not concern the defendant’s right to discover the existence of taps at the suppression stage.[1] Cruz thus leaves two questions unanswered: First, is the defendant entitled at the suppression stage, not to a hearing, but to a good faith inquiry and report by the People? Second, is a specific showing necessary in order to trigger the prosecutor’s duty?
In a Federal prosecution defendants have a statutory mechanism to learn at any stage of the proceedings whether or not they have been subjected to electronic *442 surveillance. (US Code, tit 18, § 3504.) Paragraph (1) of subdivision (a) of the Federal statute provides that “[i]n any trial, hearing, or other proceeding before any court, grand jury *** or other authority * * * (1) upon a claim by a party aggrieved that evidence is inadmissible because it is the primary product of an unlawful act or because it was obtained by the exploitation of any unlawful act, the opponent of the claim shall affirm or deny the occurrence of the alleged unlawful act”.
Federal courts have held that under the foregoing section the mere assertion that unlawful wiretapping has occurred is sufficient to compel an affirmance or denial by the Government. No preliminary showing by the allegedly aggrieved party is required. (Gelbard v United States, 408 US 41; United States v Vielguth, 502 F2d 1257, supra; Matter of Evans, 452 F2d 1239; United States v Toscanino, 500 F2d 267.) While it is true that most of the reported Federal cases involve a wiretapping claim by witnesses before a Grand Jury or by defendants at trial (see United States v Huss, 482 F2d 38), the clear language of section 3504 of title 18 of the United States'Code as well as its legislative history confirm that its purpose is to provide the crucial information at the earliest stage of the proceedings.[2] In a Federal prosecution these defendants would clearly be entitled to the data they now seek.
Although section 3504 does not apply to the States (People v Einhorn, 45 AD2d 75, revd 35 NY2d 949), the New York eavesdropping statutes “were intended, when enacted, to harmonize State law on electronic surveillance with Federal law.” (People v Mulligan, 40 AD2d 165, 166.) Accordingly, New York courts have largely extended to State defendants the same rights enjoyed by Federal parties and witnesses.
In Einhorn (supra), the Appellate Division reversed a contempt conviction and held that a witness before a State Grand Jury, like one before a Federal Grand Jury, is entitled to know whether questions asked of him are the product of electronic surveillance. He is entitled to this information, moreover, upon a bare allegation of wiretap *443 ping. No specific allegations are required to trigger the People’s obligation to inquire and report. (Santangello v People, 49 AD2d 220.) Upon his bare assertion, the witness is entitled to go before the court which “may, in its discretion interrogate the prosecutor under oath, either in camera, or in open court, to determine whether or not the basis for the questioning of the witness was founded on the illegally obtained wiretap evidence.” People v Einhorn, supra, p 950.)[3]
To be sure, the New York cases, requiring the People to affirm or deny, all concern witnesses before Grand Juries. (People v Einhorn, supra; Santangello v People, supra; People v Mulligan, supra.) The issue most often arises in that context because a Grand Jury witness is in a special bind. On the one hand, he may be held in contempt for failure to answer questions. On the other hand, he is entitled to refuse to answer questions based on illegal wiretaps. Therefore, he must learn definitively whether he has been tapped at all in order to know whether a failure to answer will be at his peril. (See Gelbard v United States, 408 US 41, supra.)
Although the Grand Jury witness has an especially pressing need for this information, there is no reason evident to this court why a defendant at a suppression hearing should not be entitled to the same information. This conclusion is supported both by the logic of New York cases dealing with Grand Jury witnesses as well as their reliance upon Federal law which does give defendants in Federal prosecutions the precise relief sought by the defendants in this case.
For example, in Einhorn (supra), the Appellate Division reasoned that if, under the Federal statute, a witness before a Grand Jury is entitled to know whether he has been subjected to electronic surveillance, he must have the information timely, so that he will know how to proceed. “If we agree”, the court wrote (45 AD2d, at p 80), “that the witness has the right to decline to answer questions based on illegal wiretapping, then how can that witness know *444 whether the wiretap is legal or illegal if the People refuse to tell him whether wiretaps were used at all?”
To paraphrase Einhorn, if a defendant has a right to exclude from his trial the fruit of an illegal wiretap, how can he protect that right and challenge the legality of the tap if the People refuse to tell him whether he has been tapped at all? (See People v Mendez, 31 AD2d 832.) A defendant who believes that evidence which will be used against him at trial is the product of illegal electronic surveillance must know with certainty whether he has indeed been subjected to electronic surveillance at all. The mere fact that the People have not given notice of intention to use wiretap evidence is cold comfort. Something more than passive prosecutorial silence is required. The defendant must know with certainty whether such surveillance has occurred.
Moreover, in order to mount an intelligent defense and to protect himself from a conviction based upon illegally obtained evidence, the defendant must have this information at the earliest possible stage of the proceedings. He ought not be made to wait until the trial itself before he learns definitively — if he ever does — whether he has been tapped. There is no reason why the procedures employed in Einhorn ought not be advanced to the pretrial suppression stage.
Having concluded that the defendants are entitled to a response from the prosecutor at this preliminary stage, the question remains whether or not that entitlement matures only upon a claim based on assertions of fact or belief supporting defendants’ motion. As a general matter, a moving party bears the burden of specifying facts which, if true, would entitle him to the relief sought. Thus, in the instant case it might be said that the defendants are entitled to press the District Attorney for inquiry and response only upon the statement of some reason to believe that the alleged tapping in fact occurred.
Notwithstanding this general and sound threshold requirement, I believe it is inappropriate in the present instance to condition the defendants’ right to know upon the averral of supporting facts. First, the circumstances *445 are such that it is extremely unlikely that the defendants would have — and therefore unreasonable to require them to have — any more specific grounds for their motion than those asserted here. More persuasively still, the Federal courts apparently require no supporting factual allegations and where the State has followed the same rule, i.e., in the Grand Jury, the bare claim suffices to trigger the prosecutor’s obligation of inquiry.
It must be emphasized that to require the People to inquire and report is not to require that a hearing be held. Upon a good faith inquiry by the Assistant District Attorney and an unequivocal denial of wiretapping, coupled in some cases with the court’s confirmatory perusal of the People’s file, the issue of electronic surveillance will be concluded. If no wiretapping has occurred, that is the end of the matter. If it did occur and the court is satisfied that no trial evidence will flow from it, the matter is likewise concluded.
There will be no proliferation of pretrial hearings. There will be no burdensome expenditure of judicial resources. The task imposed upon the assistant is not onerous, to wit, a few phone calls or letters and an assistant’s affidavit. Yet without this information a defendant is effectively foreclosed from challenging any fruits of the poisonous tree; no independent avenue of investigation is available to him. As the court noted in United States v Vielguth (502 F2d 1257, 1259, n 4, supra): “Requiring the government to affirm or deny the existence of illegal surveillance of witnesses imposes only a minimal additional burden upon the government, but requiring a witness to establish the existence of such surveillance may impose a burden on the witness that he can rarely meet, since, to be effective, electronic surveillance must be concealed from its victim.”
Two final considerations must be addressed. First, the instant affidavit upon which the search warrant issued avers that Officer Mazzilli (the affiant) had probable cause for the search on the basis of information provided by Detective Watson of the New Jersey police. Watson, in turn, received his information from a confidential informant. Insofar as the defendants here claim that Detective Watson did not truly receive his information from an *446 informant, but rather from wiretaps, are defendants not seeking to do what New York law prohibits, to wit, challenge the credibility of an informant who has not testified before the issuing magistrate? (See People v Solimine, 18 NY2d 477; People v Slaughter, 37 NY2d 596.)
It bears reiteration that a direction to the People to inquire and report whether wiretapping occurred is clearly distinguishable from a hearing at which the defense might, probe the sources of Detective Watson’s information. The direction here thus does not run afoul of the proscription against hearings to challenge an informant’s credibility.
Second, a cautionary note. Under the doctrine of Franks v Delaware (438 US 154), if a defendant can make a substantial showing that the affiant, as distinguished from his informant, gave perjurious testimony to the issuing magistrate, a hearing to challenge the affiant’s credibility will be granted. Here, the defendants made no such showing. For while their allegations may be sufficient to trigger an inquiry and report regarding wiretaps, it falls far short of that required for a hearing, under Franks. Moreover, defendants are not challenging the affiant’s credibility but rather that of informant Watson.
The Franks rule insulating the informant’s credibility from challenge, however, is designed to protect the nongovernmental informant. But where, as here, the informant is himself an identified law enforcement officer, it is doubtful that his credibility would be insulated under Franks. If the defense could make a sufficiently specific claim that an identified police informant gave perjurious information to an unsuspecting affiant, his credibility might well be subjected to challenge. As Justice Blackmun observed in Franks, the “police [may] not insulate one officer’s deliberate misstatement merely by relaying it through an officeraffiant personally ignorant of its falsity.” (438 US, at pp 163-164, n 6.)
Without in any way suggesting that Detective Watson did not indeed have a confidential informant in this case, his status as informant would not be sufficient to insulate his credibility from challenge, assuming, of course, that the defense had a sufficiently specific reason to believe wiretapping had occurred. “The conduct sought to be de *447 terred in Franks is the knowing, intentional or reckless use by law enforcement personnel of false statements in affidavits tendered in support of search warrants.” (Williams v Brown, 609 F2d 216, 220.) This deterrent effect is surely strengthened by permitting the defense in a proper case to reach past the unwitting affiant to attack the veracity, of another law enforcement agent.
The People are directed to inquire of the Middlesex, New Jersey, prosecutor’s office whether the defendants have been subjected to electronic surveillance in New Jersey at any time within six months prior to the issuance of the instant warrant, and to provide the court with an affidavit setting forth the persons communicated with, their titles, and the substance of the inquiry and the response.

. Cruz may also be distinguished in that it involved a Sixth Amendment claim that counsel’s phone had been tapped, as distinguished from the Fourth Amendment claim here that defendants themselves had been tapped. Under Federal law, while a threshold showing may be required in the former situation in order to trigger a Government inquiry, none is required for the latter. (United States v Alter, 482 F2d 1016, and United States v Vielguth, 502 F2d 1257.)

. The legislative history of section 3504 was analyzed in Gelbard v United States (supra, at p 56.)

. Although the Court of Appeals reversed the Appellate Division in Einhorn, it did so because the witness failed to request a ruling from the trial court. The Court of Appeals was unconcerned about the lack of specificity in the witness’ claim. (35 NY2d, at p 949.)