Jasen, J.
During the course of defendant’s trial for possession and transportation of incendiary bombs (Penal Law, § 265.05, subds. 1, 7; General Business Law, § 322-b) and possession of a weapon (Penal Law, § 265.05, subd. 3), defense counsel alleged that the People were employing information derived from wiretapping of the defendant and defense counsel. In colloquy with the court, the People denied the allegation. On this appeal from affirmance of defendant’s conviction, a principal point urged for reversal is that the People’s denial was insufficient in law and that a hearing should have been conducted on defendant’s allegations.
The facts may be briefly stated. At about 6:45 p.m. on March 18, 1971, Eduardo Cruz and Wilfredo Melendez were arrested at Avenue C and Third Street, Manhattan, where the red Valiant *367 in which they were riding had stopped and was blocking traffic. Officer Amira approached the vehicle and shined his flashlight about the interior of the car and noticed a brown bag on the back seat behind the driver. Melendez, who was driving, claimed the car was his. Upon producing a registration and a driver’s license, it was determined that the car was owned by another. In explanation, Melendez said that he intended to purchase the car from the registered owner in about two weeks when the latter returned from Puerto Rico. As Amira returned the license and registration to Melendez, Cruz, who was seated in the front passenger side of the vehicle, made a sudden movement toward the brown bag on the rear seat. Amira snatched the bag from his grasp and Cruz shouted, “ Be careful man, that’s a bomb ”, or words to that effect. Amira then opened the bag and withdrew a device which he recognized to be a bomb mechanism.* At gunpoint, Melendez and Cruz were ordered out of the car. Amira advised the two of their rights. Cruz was asked if the devices could detonate, but refused to answer. Amira admonished that if the devices detonated and people were injured, additional charges would be brought. Cruz then replied, “ if you know anything about bombs, they can’t go off. ’ ’ The devices were secured and Melendez and Cruz, along with the vehicle, were removed to the station house. At the station house, the car was searched and a billy club was seized. A motion to suppress the billy club and the bag containing the incendiary devices was denied. After a hearing, defendant’s statements made to the arresting officer were ruled voluntary beyond a reasonable doubt.
Before trial, defendant sought disclosure of any evidence of eavesdropping upon Cruz or defense counsel. The motion was denied on the ground that the People were required to give advance notice of intent to use evidence obtained by such means. *368 (CPL 700.70.) No such notice was given and the case proceeded to trial.
At trial, during cross-examination of Melendez, defense counsel for Cruz moved for court examination of the prosecutor’s file to determine if it contained any evidence of an exculpatory nature derived from “ wiretapping, photography or * * * direct surveillance ”. In response, the Assistant District Attorney stated, ‘ ‘ I have nothing — no other statements by the witness on trial, and nothing of an exculpatory nature of any kind, nor anything derived from any kind of surveillance of the nature Mr. Bernstein [Cruz’s counsel] was talking about ”. The documents used in cross-examining Melendez were offered to the court, examined, and the motion was denied.
The next day, after both sides had rested, co-counsel for Cruz, referring to cross-examination of a defense witness about the “ Anarchist’s Cookbook ”, alleged that her telephone had been tapped, implying that the prosecutor’s line of questioning was the product of a wiretap. Counsel declined the court’s offer to instruct the jury to disregard the question. A motion for a mistrial was then denied. With regard to the allegation of wiretapping, the court noted, “ there is nothing before me except your statement and * * * nothing * * * which requires any action on the part of the court ”.
Again, after summation by the Assistant District Attorney, co-counsel for Cruz alleged that wiretap evidence was being used. Specifically, counsel mentioned a reference in summation to Sister Annmarie which name, according to counsel, had been mentioned by her only once during a telephone conversation with a Father McCarthy the day before. After an off-the-record discussion at the bench, no further mention of this matter was made.
On this record, defendant’s initial allegation of eavesdropping can only be characterized as vague, conclusory and unsupported. As such, it barely sufficed to shift to the People the burden of responding. The People’s denial, when coupled with the offer and the court’s perusal of the prosecutor’s file for traces of eavesdropping evidence, which revealed none, sufficiently met the allegation. Allegations respecting cross-examination about *369 the “ Anarchist’s Cookbook ” and the reference in summation to Sister Annmarie, following, as they did, so closely upon the previous denial, are fairly within its sweep as well. And these latter allegations, although more specific, were, on the record before us, little more than speculative.
To be sure, allegations of this sort raise serious questions affecting the very integrity of the judicial process. To use, without notice to the defendant, evidence derived from electronic surveillance is impermissible, even if the surveillance itself is legal. (CPL 700.70.) And surreptitious invasion of the councils of the defense by wiretapping or electronic surveillance may so seriously abridge the constitutional right to the assistance of counsel as to make a fair trial impossible. (See Hoff a v. United States, 385 U. S. 293, 306-309.) In recognition of the gravity of such allegations and to facilitate disposition at future trials, it may be useful here to outline briefly some pertinent guidelines.
Initially, at least, the defendant should have the burden of coming forward with the facts which reasonably lead him to believe that he or his counsel have been subjected to undisclosed electronic surveillance. The defendant’s allegation should be reasonably precise and should specify, insofar as practicable, the dates of suspected surveillance, the identity of the persons and their telephone numbers, and the facts relied upon which allegedly link the suspected surveillance to the trial proceedings. (Cf. United States v. Alter, 482 F. 2d 1016, 1026.) While it may be assumed that the People have the answers, their ability to respond in a manner consistent with orderly trial procedure and the defendant’s rights should not be hampered by undue vagueness.
Upon a sufficient showing, it is then incumbent upon the People to affirm or deny the allegations. Ordinarily, a denial should be in affidavit form signed by a responsible official, which, in most cases, would probably be the District Attorney or his designate. The People’s affidavit should be reasonably specific, comprehensive and forthright. By way of example, it should specify the appropriate local, State and, if applicable, Federal law enforcement agencies contacted to determine whether *370 electronic surveillance had occurred, the persons contacted, the substance of the inquiries and replies, and the dates of claimed surveillance to which the inquiries were addressed. (See United States v. Alter, supra, at p. 1027.) If appropriate, and this is a matter addressed to the sound discretion of the trial court, a hearing may be conducted during trial. (See People v. Pobliner, 32 N Y 2d 356, 367; cf. People v. Morhouse, 21 N Y 2d 66, 77; but see In re Horn, 458 F. 2d 468, 471-472.)
Numerous other points have been urged for reversal and have been considered on this appeal. Given the suspicious circumstances of this traffic stop, the arresting officer acted reasonably for his own safety in seizing the bag containing the incendiary devices. Shining the flashlight about the interior of the car was not an unreasonable intrusion and the subsequent search of the automobile at the police station was justifiable as well. (People v. Sullivan, 29 N Y 2d 69.) Nor can it be said, as a matter of law, that the inculpatory remarks spoken by the defendant to the arresting officer were involuntary in the constitutional sense. The evidence was sufficient for the jury to conclude beyond a reasonable doubt that the devices seized at the scene were incendiary bombs containing an explosive substance. Although not fully assembled, all the constituent parts were there and readily capable of being finally assembled for their obvious end. Also, the statutory terms — “ incendiary ”, “bomb” and “explosive substance” — are susceptible of reasonable application in accordance with the common understanding of men, and the statutory presumption of possession by all in a vehicle found to contain a weapon, dangerous instrument or appliance (Penal Law, § 265.15, subd. 3) has been sustained by this court against a due process challenge. (See, e.g., People v. Russo, 303 N. Y. 673.) Of the numerous trial errors asserted, none require reversal
Accordingly, the order of the Appellate Division should be affirmed.
Chief Judge Breitel and Judges Gabrielli, Jones, Wachtler and Rabin concur; Judge Stevens taking no part.
Order affirmed.

 The bag contained three watches with holes drilled in their crystals and wires soldered to their backs. These wires were connected to batteries from which wires, wrapped with filament adhesive, ran to flashbulbs from which ran loose wires. Also in the bag were three empty cigarette boxes, a tinfoil containing a white powder, later determined to be a mixture of potassium chlorate and sucrose, and five smaller bags.