135 N.J. Super. 179 (1975)
342 A.2d 897
STATE OF NEW JERSEY, PLAINTIFF,
v.
ANTON CHAITKIN, ELIJAH BOYD, MARK CHRISTOPHER KWICINSKI, MAX SAWICKY, RICHARD FREEMAN, KONSTANDINOS KALIMTGIS, DEFENDANTS.
Superior Court of New Jersey, Essex County Court, Law Division.
March 24, 1975.
*181 Mr. Robert J. Schmitt, Jr., attorney, for defendant, Anton Chaitkin (Messrs. Aronsohn, Kahn & Springstead, attorneys; Mr. Robert J. Schmitt, Jr., on the brief).
Mr. Lee Shelly for defendant Elijah Boyd.
Mr. Edward Colligan for defendant Mark Christopher Kwicinski.
Mr. Myroslaw Smorodsky for defendant Max Sawicky.
Mr. Sanford Gudger for defendant Richard Freeman.
Mr. John P. Gleason for defendant Kostandinos Kalimtgis.
Mr. Donald Rinaldi, Assistant Prosecutor, for plaintiff (Mr. Joseph P. Lordi, Essex County Prosecutor, attorney).
BEDFORD, J.C.C.
On January 22, 1975 a motion was granted by this court to consolidate for trial the indictments pending against the five named defendants. The present pretrial motion was filed by defendant Anton Chaitkin on February 19, 1975 and scheduled for preliminary hearing on February 24, 1975. On the date of the hearing Chaitkin's four codefendants joined in his motion. Subsequently, a sixth defendant, not joined for trial, was permitted to join in the motion.
In this motion defendants seek four types of relief, as set forth in the notice of motion and the original brief in support thereof prepared by counsel for Chaitkin: (1) disclosure pursuant to 18 U.S.C.A. § 3504(a), by the Central Intelligence Agency, the Federal Bureau of Investigation *182 and the Attorney General of the United States of the existence or nonexistence of illegal wiretaps and electronic surveillance relating to these defendants; (2) the issuance by the court of a certificate under seal requiring the appearance in this State, before this court, of William Colby, Director of the C.I.A., and Edward Levi, Attorney General of the United States, or their legal representatives, pursuant to N.J.S.A. 2A:81-20, to affirm or deny the existence of electronic surveillance relating to the defendants; (3) staying Joseph P. Lordi, Essex County Prosecutor, from prosecuting defendants until such time as the above federal authorities affirm or deny the existence of electronic surveillance relating to defendants, and (4) dismissal of the indictments against defendants on the grounds of denial of equal protection of the laws with respect to them, in that the indictments were drawn and returned for the improper purpose of chilling the exercise of rights constitutionally guaranteed by the First Amendment and to further punish defendants for the articulation of their political beliefs, and to stifle their participation in constitutionally protected activities against both the policies of the City of Newark and the C.I.A.
The indictments returned against defendants charge them variously with violations of three statutes: (1) N.J.S.A. 2A:151-41, possession of a dangerous weapon; (2) N.J.S.A. 2A:90-4, assault and battery on law enforcement officer, and (3) N.J.S.A. 2A:119-1, larceny from the person. The charges arose from incidents which occurred during a rally conducted by the United States Labor Party at Newark City Hall on September 5, 1973.
Defendants first contended that the various agencies of the Federal Government, set forth above, must affirm or deny the existence of illegal wiretaps and electronic surveillance pursuant to the procedure established in 18 U.S.C.A. § 3504(a) which reads in relevant part as follows:

*183 Sec. 3504. Litigation concerning sources of evidence
(a) In any trial, hearing, or other proceeding in or before any court, grand jury, department, officer, agency, regulatory body, or other authority of the United States 
(1) upon a claim by a party aggrieved that evidence is inadmissible because it is the primary product of an unlawful act or because it was obtained by the exploitation of an unlawful act, the opponent of the claim shall affirm or deny the occurrence of the alleged unlawful act.
In deciding certain of the issues presented the court refers to the following federal and state authorities for purposes of guidance only. Additionally, the court holds for purposes of this motion that 18 U.S.C.A. § 3504 and the procedure enacted therein in no way binds a court of this State. At the preliminary hearing of the motion, counsel for the State, counsel for defendants and the Court were in agreement on this point.
However, this court's ruling that 18 U.S.C.A. § 3504 is not binding on a court of this State does not end the inquiry, the underlying problem relating to the means by which and under what circumstances a defendant in a criminal prosecution may discover the existence of electronic surveillance remains. To deny a defendant any procedure to discover the existence of unlawful electronic surveillance would render nugatory the protection of the Fourth Amendment in the area of electronic surveillance, rights granted by 18 U.S.C.A. § 2510 et seq. and the Federal and State Constitutions notwithstanding. For this reason an understanding of how federal and state courts have treated the problem is useful.
In enacting federal wiretap legislation, 18 U.S.C.A. § 2510 et seq., Congress provided no guidance therein as to the means by which an "aggrieved person" might discover the existence of his grievance, i.e., illegal electronic surveillance. The problem thus presented was perhaps best articulated by Judge Bazelon in In re Evans, 146 U.S. App. D.C. 310, 452 F.2d 1239, 1249 (1971): "By hypothesis electronic surveillance functions properly when its object *184 has no idea that his communications are being intercepted." Aware of the problems created by the inherently covert nature of electronic surveillance in the area of Fourth Amendment rights, Congress attempted to remedy the problem by subsequently enacting 18 U.S.C.A. § 3504.
The meaning to be ascribed to § 3504 was discussed in In re Evans, supra. The majority of the court took the position that upon the "mere assertion that unlawful wiretapping has been used against a party" (emphasis supplied) the government must affirm or deny the occurrence of the alleged surveillance. Id. at 1242, 1247. However, in a dissenting opinion by Judge Wilkey it was initially noted (at 1265) that no authority was cited to substantiate the majority's view. In Judge Wilkey's view, a "mere assertion" does not qualify as a "claim":
The meaning of the term "claim" * * * is illuminated by the legislative history accompanying it. This history reveals a Congressional desire for specificity. Congress' Special Findings requiring that claims that evidence was obtained by the exploitation of unlawful acts be of sufficiently recent vintage (five years or less) in order that there be some degree of certainty of the unlawful source of such evidence, indicate a Congressional intent that such alleged unlawful acts must therefore be set forth. * * * [at 1265-66, emphasis supplied]
Under this statute there are, in effect, two requirements for raising a "claim": first, the petitioner must have standing to challenge the allegedly unlawful conduct. This would require the petitioner to plead, with at least some degree of specificity, his relation to the allegedly unlawful event and its harmful effect on him. * * * [at 1266]
The second requirement for raising a claim under * * *. § 3504 (a)(1). * * * is that the claimant must specify whether the evidence which he alleges is inadmissible is either the primary product of an unlawful act, the illegality of which he must show, or that it was obtained by the exploitation of an unlawful act, the illegality of which he must also demonstrate. * * * [at 1268]
The Ninth Circuit is in substantial accord with the view expressed by Judge Wilkey in Evans. In a unanimous opinion by the court it was held in United States v. Alter, 482 F.2d 1016, 1026 (1973) that in order to "trigger" a § *185 3504(a) inquiry the "affidavits and other evidence in support of the claim must reveal":
(1) the specific facts which reasonably lead the affiant to believe that named counsel for the named witness has been subjected to electronic surveillance;
(2) the dates of such suspected surveillance;
(3) the outside dates of representation of the witness by the lawyer during the period of surveillance;
(4) the identity of the person(s) by name or description, together with their respective telephone numbers, with whom the lawyer was communicating at the time the claimed surveillance took place, and
(5) facts showing some connection between possible electronic surveillance and the grand jury witness who asserts the claim or the grand jury proceeding in which the witness is involved.
The requirements thus enunciated to raise a prima facie claim requiring the government to affirm or deny the existence of electronic surveillance pursuant to § 3504 were distilled to fit the circumstances of the Alter case from Cohen v. United States, 378 F.2d 751 (9 Cir.1967). Alter involved a witness called before a grand jury. The witness refused to answer certain questions posed to him on the ground that the questions were predicated on information gathered by unlawful electronic surveillance, a contention which, if established, would have afforded the witness "just cause" to refuse to answer the question. 28 U.S.C.A. § 1826(a); see Gelbard v. United States, 408 U.S. 41, 92 S.Ct. 2357, 33 L.Ed.2d 179 (1972). Cohen, decided in 1967, prior to the enactment of Section 3504, involved a criminal prosecution in which defendant moved pursuant to Fed. R. Crim. P. 41(e) to suppress evidence which was allegedly the fruit of asserted illegal monitoring of his telephone calls. The Ninth Circuit, citing Nardone v. United States, 308 U.S. 338, 60 S.Ct. 266, 84 L.Ed. 307 (1939), to support the proposition that evidentiary hearings relating solely to the existence of allegedly tainted evidence are not required, absent solid allegations which raise a bona fide issue concerning the fact of surveillance, devised minimum *186 standards which were required to be met to warrant an evidentiary hearing:
The question is whether the allegations in the moving papers, including affidavits if any are filed, are sufficiently definite, specific, detailed, and nonconjectural to enable the court to conclude that a substantial claim is presented * * *. [Cohen, supra at 761. emphasis supplied]
The federal courts have had no difficulty analogizing the recalcitrant grand jury witness to a defendant charged with crimes, at least insofar as the issue of proof required to "trigger" the disclosure of the occurrence of electronic surveillance is concerned. See In re Evans, supra at 1268, and People v. Cruz, 34 N.Y.2d 362, 357 N.Y.S.2d 709, 314 N.E. 2d 39 (Ct. App. 1974).
The briefs and moving papers submitted by defendants and the assistant prosecutor reveal no reported decision by a court of this State dealing with the threshold issues, nor has the court found any. The rights conferred by the Fourth Amendment require some means of implementation. However, the proposition that all a defendant need do to shift the burden to the government to affirm or deny the existence of electronic surveillance is to offer a "mere assertion", In re Evans, supra, that he is an "aggrieved person" by virtue of his subjection to unlawful electronic surveillance, is untenable. This court prefers Judge Wilkey's dissenting opinion in Evans, supra, at XXXX-XX-XX, wherein he presents cogent arguments against the "mere assertion" rule adopted by the majority.
Regardless of the title ascribed to this motion by defendants, the main point, in terms of the first three types of relief sought, is a motion to suppress. Due to the peculiar nature of electronic surveillance as opposed to tangible evidence, a motion to suppress intercepted communications is necessarily a fragmented procedure. This is especially true where the very existence of the surveillance is merely "asserted". However, the parts of that procedure comprise the *187 whole procedure, which is a motion to suppress. Procedure with regard to suppression of evidence in this State is governed by R. 3:5-7. The rule provides in pertinent part:
(a) * * * a person claiming to be aggrieved by an unlawful search and seizure and having reasonable grounds to believe that the evidence obtained may be used against him in a penal proceeding, may apply * * * to suppress the evidence obtained. [Emphasis supplied]
The language of the rule is unambiguous. The right to move to suppress evidence is conditioned upon (1) a claim by the person that he is aggrieved by an unlawful search and seizure, and (2) a showing of reasonable grounds to believe that the evidence will be used against him in some penal proceeding. These two requirements are conditions precedent to invocation of the right to move for suppression. Cf. State v. Casale, 106 N.J. Super. 157 (App. Div. 1969). Ordinarily, where seizure of tangible and otherwise ordinary evidence, such as contraband, is involved, the person from whom or in whose presence it was seized has immediate knowledge of the seizure, and is aggrieved, if he has standing to object to the use of the item seized as evidence. Where the seizure involves contraband the aggrieved party will invariably have reasonable grounds to believe that the contraband will be used to prove either the fact of possession or some other crime related to possession of contraband. Therefore, in the typical situation the issues of standing and "reasonable grounds to believe" do not present material questions, and consequently, the only issue upon which proofs are taken is whether or not the search and seizure was lawful.
On the other hand, where the existence of tainted evidence can only be suggested, as is the situation here, material questions of fact concerning the standing of a claimant and the reasonableness of his grounds to believe that the evidence derived from the alleged surveillance will be used against him necessarily arise. These preliminary issues must be resolved before the hearing can shift to other issues.
*188 Initially, therefore, each of the defendants should have and does have the burden of coming forward with the facts which reasonably lead him to believe that he has been subjected to unlawful electronic surveillance. R. 3:5-7; United States v. Alter, supra at 1026; People v. Cruz, supra, 357 N.Y.S.2d at 713, 314 N.E.2d at 42. Additionally, in claiming that he is an aggrieved party each defendant must allege a proprietary, possessory or participating interest in the place or places where the conversations were supposed to have been seized. Cf. State v. Allen, 113 N.J. Super. 245 (App. Div. 1970), and In re Search of C. Co. Premises, 115 N.J. Super. 262 (App. Div. 1971). In determining the reasonableness of each defendant's belief that he has been subjected to unlawful electronic surveillance, the court shall be guided by the standards set forth in Cohen v. United States, United States v. Alter and People v. Cruz, all supra. From the principles set forth in these cases, the standards shall be as follows:
(1) Defendant's allegation should be reasonably precise;
(2) The allegation should be set forth, insofar as practicable (a) the dates of suspected surveillance, (b) the identity of the persons and their telephone numbers, and (c) the facts relied upon which allegedly link the suspected surveillance to the trial proceedings.
Defendants do not have to plead and prove their entire case to establish standing and to trigger further inquiry. The court insists, however, that defendants present a prima facie showing of reasonable belief that they were subjected to illegal electronic surveillance and that the conversations thus obtained or the unattenuated fruits thereof will be used as evidence against them in this prosecution. See United States v. Alter, supra at 1026.
Without expressing an opinion concerning the conclusion reached by the court on the facts presented in Commonwealth v. Borghmann, 55 D. & C.2d 247 (Pa. C.P. 1971) cited in the Chaitkin brief, we point out that the same initial burden *189 was placed on defendants in that case. Although couched in terms of avoiding a "fishing expedition" the court in Borghmann without reference to reported decisions or rule of court, required defendants (at 248) to prove the reasonableness of their belief that they had been subjected to unlawful electronic surveillance.
Until all of the requisite proofs have been submitted to the court on the narrow issues of "standing" and "reasonableness" and a ruling made thereon, no further proceedings shall be conducted by the court, nor shall the requested process issue.