THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JOHN HILL, Appellant.

Fourth Department, April 13, 1979

## APPEARANCES OF COUNSEL

*Ramsey Clark* for appellant.

*Robert Abrams, Attorney-General (Henry Boitel* and *David E. Flierl* of counsel), for respondent.

## OPINION OF THE COURT

CARDAMONE, J. P.

On the morning of September 9, 1971 Attica Prison was taken over by its inmates. The take-over and resulting riot began when 30 or more inmates—several of whom were carrying as weapons legs which had been ripped off chairs and desks—pushed against the A Tunnel Gate until it gave way. The prisoners streamed through the gate and into "Times Square", a central area at which four corridors of the prison meet. In the resulting melee William Quinn, the Correction Officer in charge of "Times Square", was struck in the head several times with a heavy board receiving head injuries which later resulted in his death. At least three key witnesses without hesitation identified appellant as the person who had struck Officer Quinn. At the conclusion of his trial on April 5, 1975 appellant Dacajeweiah (indicted as John Hill) was found guilty of murder by a unanimous jury verdict and was thereafter sentenced to a term of imprisonment from 20 years to life. Appellant takes this appeal from this judgment of conviction.

A number of issues are presented for our determination. They relate generally to (1) claimed inequities in the impaneling of the Grand Jury which indicted appellant; (2) the process by which the petit jury was selected; (3) alleged denial of due process rights arising from failure to accord a hearing on claims of electronic surveillance of defense strategy, invasion by an FBI informer of the defense camp, and improper curtailment of cross-examination of prosecution witnesses; (4) a claim that material to which appellant is entitled under *Brady v Maryland* (373 US 83) was improperly denied him; (5) alleged selective and discriminatory prosecution; and (6) claimed error in the refusal to dismiss the indictment in the interests of justice.

## I—GRAND JURY

The Grand Jury which indicted appellant and 61 other inmates was impaneled in Wyoming County, the county in which Attica is located, on November 29, 1971. From a pool of 51 persons, 23 grand jurors were ultimately selected. Of these 51 persons, 25 were excused for hardship reasons, because they disbelieved in capital punishment, or because they doubted their ability to serve impartially. Thus, out of a pool of 51 prospective grand jurors, only 26 remained from whom 23 would have to be chosen. As it turned out, 11 of the 23 grand jurors finally chosen had friends, relatives, or acquaintances who were employed at Attica or by law enforcement agencies or who were directly involved in the Attica events. At the commencement of the *voir dire,* appellant's counsel moved for a change of venue. This motion was summarily denied on the ground that there is no provision in law for such a change of venue at the Grand Jury level.

■ There is no doubt that an accused individual has a constitutional right to have his case presented before a fair and impartial Grand Jury (see *Castaneda v Partida,* 430 US 482; *Peters v Kiff,* 407 US 493; *People v Brophy,* 304 NY 391). Appellant argues that his indictment was the result of prejudice on the part of the grand jurors because a number of the grand jurors were involved, to varying degrees, with the prison or law enforcement agencies. The Grand Jury minutes, however, reveal that all 23 grand jurors specifically stated that they had no bias against prison inmates and could deal fairly and impartially with the evidence presented before them. We conclude, therefore, that the motion for transfer of venue of the Grand Jury on the grounds stated was properly denied. Appellant's other challenges to the Grand Jury are without merit.

## II—PETIT JURY

On January 21, 1975 while examination of prospective petit jurors was still in progress, the United States Supreme Court handed down *Taylor v Louisiana* (419 US 522) in which it held that a jury selection system which operates to exclude women from jury service fails to comport with the Sixth and Fourteenth Amendments of the United States Constitution.

On February 4, 1975 two weeks after *Taylor* and before the jury was impaneled, appellant made a written motion to

quash the petit jury panel on the ground that the automatic exemption for women from jury service, as then contained in subdivision 7 of section 665 of the New York Judiciary Law, violated the fair cross section requirement of the Sixth Amendment of the United States Constitution. In his motion papers appellant alleged that the proportion of women on the venires seemed to be about 30%, and that this percentage was far below that of the population of women in the county, i.e., 53%. Appellant's request for a hearing so that these percentages and other pertinent facts could be accurately determined was denied. Jury selection was completed on February 21, 1975. The petit jury included four women and two Blacks. The trial commenced on February 24, 1975.

■ A criminal defendant has a right to a petit jury drawn from a fair cross section of the community and a system that results in the systematic exclusion of women is constitutionally infirm (Duren v Missouri, 439 US 357; Taylor v Louisiana, 419 US 522, supra). "In order to establish a prima facie violation of the fair-cross-section requirement, the defendant must show * * * [inter alia] that the representation of [women] in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community" (Duren v Missouri, supra, 99 S Ct, at p 668). Here the venire consisted of no less than 30% women and the petit jury contained four women or 33⅓%. Viewing the statistics in light of People v Parks (41 NY2d 36), it cannot be said that women were systematically excluded from jury service.

Further, appellant is not automatically entitled to a hearing upon raising a challenge to a jury panel pursuant to CPL 270.10. Appellant's oral motion made on January 6, 1978 failed to specify sufficiently the facts substantiating his challenge to the jury panel and hence, his right to challenge it by way of a hearing was not preserved (People v Prim, 40 NY2d 946, 947). Also, in view of appellant's allegation that in the weeks preceding his trial the percentage of women in the jury venires approximated 30% and the fact that four women served on his jury, it is not at all clear what other pertinent facts appellant could have established at such a hearing. At best, therefore, the failure to grant a hearing concerning this challenge to the panel was harmless error.

Finally, appellant's various other challenges to the petit jury are without merit. Appellant offered no evidence showing

there was a systematic exclusion from the jury selection process of any other "distinctive groups in the community" *(Taylor v Louisiana, supra,* p 538).

### III—DUE PROCESS CLAIMS

On December 20, 1974 Erie County Supreme Court Trial Justice KING denied appellant's motion for a pretrial hearing on the issue of electronic surveillance "of the defense camp". In so doing, Justice KING relied heavily on the determination made by Erie County Supreme Court Justice MOORE in two related Attica cases where, upon applying the guidelines set forth in *People v Cruz* (34 NY2d 362), similar requests for hearings had been denied.

On April 11, 1975 after the jury had already returned its verdict, appellant requested an immediate hearing on the issue of whether governmental officials had engaged in infiltration of the defense camp by means of informants. In another Attica prosecution *(People v Shango,* indicted as Bernard Stroble), on papers similar to appellant's motion, Erie County Supreme Court Trial Justice MATTINA ordered that a hearing be held concerning these same allegations. This Trial Justice concluded that there was no governmental interference, surveillance or infiltration of the Attica defense camp. He further found that there were no informants employed with or without pay by the FBI, Attorney-General's office, or New York State Police working within the Attica Brothers Defense League and associated groups.

On May 7, 1975 after reviewing Justice MATTINA's findings in the *Stroble* case, Justice KING adopted them and used them as the basis for his denial of appellant's motion of April 11.

■ Whether a hearing should be held under the circumstances present in the instant case "is a matter addressed to the sound discretion of the trial court" *(People v Cruz,* 34 NY2d 362, 370, *supra).* We cannot find as a matter of law that appellant's rights were violated or that the trial court abused its discretion when it denied appellant's motions for hearings on the issues of informants or electronic surveillance. We further observe that the basic concern expressed in *Cruz* is that a defendant's constitutional right to the assistance of counsel has not been so seriously abridged by the alleged wiretapping or electronic surveillance (or, as here, by paid informants) that a fair trial is impossible. Such serious abridg-

ment of the right to assistance of counsel is not alleged by appellant in any of his motion papers.

■ With respect to the claimed curtailment of appellant's right to cross-examination, it appears that Rivers and Kopec were former Attica inmates who testified for the prosecution. On cross-examination these witnesses claimed a privilege not to answer questions concerning conversations which they had with their attorneys during the times that they were being interrogated by State investigators. Appellant claims that as a result he was denied his right to confront these witnesses and that their testimony should have been subject to limiting instructions. Unlike the situation in *Davis v Alaska* (415 US 308), appellant was able to place before the jury the criminal records of both witnesses, the facts concerning their involvement in the riot and their expectations of favorable treatment in return for their testimony. Under these circumstances, the action of the trial court in sustaining the privilege was proper and the trial court properly instructed the jury that it could draw from the refusals to answer an inference adverse to the prosecution only if it also found that the prosecution had induced the witnesses to assert the privilege (see Fisch, New York Evidence [2d ed], § 1127; McCormick, Evidence [2d ed], § 76).

## IV—BRADY MATERIAL

■ Appellant made a series of *Brady (Brady v Maryland,* 373 US 83, 86-88, *supra)* motions, including one at trial alleging that the State failed to turn over various statements and material that would have helped defendant in the preparation of his case. The court has reviewed the Albright-Vestner, Bell and Meyer reports and has concluded that none of them contains specific material that would exonerate appellant Dacajewiah or tend to establish his innocence for the crime of which he was accused and found guilty.

## V—SELECTIVE PROSECUTION

Appellant first raised the issue of discriminatory prosecution in his first motion to dismiss the indictment on the ground that only inmates, and not State troopers, were being prosecuted for Attica-related crimes. That motion was denied without a hearing. Appellant raised this issue again at various times throughout the trial and asked for a hearing. The

motions were uniformly denied. After various allegations were made by Malcolm H. Bell, former Assistant Attorney-General, appellant again raised the issue of discriminatory prosecution in his motion to set the verdict aside. This motion was also denied.

In *Yick Wo v Hopkins* (118 US 356) the Supreme Court held that purposeful discrimination in the administration of an otherwise nondiscriminatory law violates equal protection. This principle has since been applied in a number of Federal cases *(United States v Falk,* 479 F2d 616 [refusing induction into the armed forces]; *United States v Steele,* 461 F2d 1148 [refusal to answer census questions]) as well as in a number of New York cases *(People v Utica Daw's Drug Co.,* 16 AD2d 12 [violation of Sunday "blue laws"]; *People v Goodman,* 31 NY2d 262 [village ordinance banning commercial signs greater than a certain size]; *People v Walker,* 14 NY2d 901 [violations of multiple dwelling laws]). However, no case has upheld a selective enforcement claim within the context of a prosecution for any violent crime. Indeed, a Federal court rejected an argument of selective enforcement in a somewhat analogous case where defendant was prosecuted for crimes arising out of the uprising at Wounded Knee *(United States v Banks,* 368 F Supp 1245).

New York imposes a heavy burden on one who alleges discriminatory enforcement. It must be shown at the outset that there is a conscious and intentional discrimination in prosecuting for a crime in a community where there is "general disregard of a particular law" *(People v Utica Daw's Drug Co.,* 16 AD2d 12, 17-18, *supra)* and it must be further established that (1) a similar crime was committed and that the prosecution had legally sufficient evidence connecting someone with the commission of that crime; (2) the prosecution singled out defendant because of "personal animosity, nonconformity, unpopularity, or some other illegitimate reason offensive to our notions of fair play and equal treatment under the law", and (3) the prosecutorial determination to single out defendant was part of a pattern of discrimination intentionally practiced against him *(People v Goodman,* 31 NY2d 262, 268-269, *supra).* In the instant case appellant has not met these requirements. The only support for his claim of selective enforcement is found in the affidavit of Malcolm H. Bell dated June 28, 1978 in which it was alleged that various felony cases involving shooting of inmates by State troopers were

never presented to the Grand Jury for indictment. The Meyer report, however, challenged the allegation that the prosecution had legally sufficient evidence to indict in many of the cases cited by Bell. In his report Bell also failed to offer sufficient proof that from the beginning of the investigation the prosecution purposely and intentionally determined not to prosecute any of the troopers or that such a prosecutorial determination was part of a pattern of invidious discrimination. The Meyer report in fact found that there was no evidence of an intentional prosecutorial cover-up.

Finally, even were appellant able to prove that the State intentionally failed to prosecute the "shooter cases", he still has failed to make the showing necessary to bring his case within the rubric of selective enforcement as set forth above in *Goodman.* Appellant was tried and convicted of murder. We need scarcely add that murder is not a crime the enforcement of which is generally disregarded in this State.

## VI—DISMISSAL IN THE INTEREST OF JUSTICE

Before trial appellant joined a group of inmates in an omnibus motion seeking dismissal of their indictments in the interest of justice pursuant to CPL 210.40. This motion was denied.

CPL 210.40 provides, in pertinent part, as follows: "such dismissal is required as a matter of judicial discretion by the existence of some compelling factor, consideration or circumstance clearly demonstrating that conviction or prosecution of the defendant upon such indictment or count would constitute or result in injustice". The standards to be applied when determining whether to grant such relief are set forth in *People v Clayton* (41 AD2d 204, 208) "[a]mong the considerations which are applicable to the issue are (a) the nature of the crime, (b) the available evidence of guilt, (c) the prior record of the defendant, (d) the punishment already suffered by the defendant, (e) the purpose and effect of further punishment, (f) any prejudice resulting to the defendant by the passage of time and (g) the impact on the public interest of a dismissal of the indictment".

Upon application of the *Clayton* standards, it is clear that appellant is not entitled to a dismissal in the furtherance of justice. He was convicted of the murder of an unarmed correction officer whose death, according to the McKay Commission, was a significant factor in hardening the resolve of

the leadership of the Attica rebellion not to compromise. In its prosecution against appellant, the State had ample evidence to convict. Indeed, appellant raises no serious challenge to the sufficiency of that evidence. No mitigating factors are raised that justify a dismissal by this court; nor is the failure to grant appellant a requested *Clayton* hearing grounds for dismissal *(People v Johnson,* 64 AD2d 821).

This case is the last one that remains from the Attica rebellion of September, 1971. On December 31, 1976 Governor Carey in an effort to close this episode in New York's history pardoned all others of those convicted and commuted this appellant's sentence to the extent of making him eligible for parole at such time as the Parole Board deemed appropriate. The Parole Board has now granted appellant parole completing the effort to end the matter.

The judgment of conviction should be affirmed.

HANCOCK, JR., SCHNEPP, CALLAHAN and WITMER, JJ., concur.

Judgment unanimously affirmed.