OPINION OF THE COURT
William C. Brennan, J.
Defendants herein were indicted for criminal possession of a weapon in the third degree (knowingly and unlawfully possessing an incendiary bomb; two counts) and reckless endangerment in the first degree (operating a motor vehicle with flammable fluids in the trunk). The defendants were charged as “each aiding the others” with respect to each of the three counts of the indictment.
Defendants are now seeking dismissal pursuant to GPL 210.20, 210.30 and 210.40, specifically addressing the issue as to whether the contents seized from the trunk of their vehicle constituted “incendiary bombs” in order to sustain the indictment.*
*1088 On or about the morning of June 19, 1983, at approximately 3:30 a.m., immediately prior to their arrest, the defendants were observed exiting their vehicle which was stopped on a ramp on the upper roadway of the 59th Street Bridge leading to Manhattan from Queens. The defendants had been under surveillance by private detectives hired by the Metropolitan Taxi Board of Trade to investigate acts of vandalism arising from a breakdown in labor negotiations between the Board and the taxi drivers union. The detectives had learned that an incident was to occur on this date in said location, which was the site of the Midland Cab Co., in Long Island City. The ramp on which defendants’ vehicle had stopped was adjacent to and overlooked the Midland Cab Co.
According to the People’s first witness, Leslie Wolff, a self-employed investigator, he observed the driver of the vehicle (defendant Perez [a member of the taxi union]) and the two other passengers exit said vehicle, open the trunk and then saw defendant Perez leaning into the trunk and then walk away directly to the railing of the ramp. Wolff then instructed his two partners to proceed to the area immediately at which time the defendants were apprehended and shortly thereafter arrested by the police. Wolff testified that in the trunk was “a hurricane-type lantern, which to me was a fire bomb, and a large kerosene can and another gasoline can and some other flammable liquid.” Both Wolff and one of his partners testified that they did not observe any of the three defendants take anything out of the trunk or have anything in their hands when confronted by the detectives.
Penal Law § 265.02, criminal possession of a weapon in the third degree, states:
“A person is guilty of criminal possession of a weapon in the third degree when * * *
“(2) He possesses any explosive or incendiary bomb, bombshell, firearm silencer, machine-gun or any other firearm or weapon simulating a machine-gun and which is adaptable for such use”.
Penal Law § 265.00, definitions, does not provide a definition of “incendiary bomb.”
Defense counsel argues that the items seized from the defendants’ vehicle were household items not intended to be proscribed by the above statute and that the Grand Jury was *1089 improperly charged as to the application of said statute as it pertains to the evidence presented.
The People contend that a police laboratory analysis report found the kerosene and other liquids seized to be flammable and that a reading of the Grand Jury minutes in connection with the definition of “incendiary device” {infra) is sufficient to warrant denial of defendants’ motion.
Penal Law § 150.20, arson in the first degree, provides: “2. As used in this section, ‘incendiary device’ means a breakable container designed to explode or produce uncontained combustion upon impact, containing flammable liquid and having a wick or a similar device capable of being ignited.” (Emphasis supplied.)
In 1970 the New York State Legislature amended Penal Law § 265.02 to include the terms “explosive” and “incendiary”, such “legislation * * * being prompted by a series of terror bombings in early 1970” (People v McCrawford, 47 AD2d 318, 321) and generally associated with “Molotov Cocktails”.
As stated by then-Governor Rockefeller in approving the amendment: “The penalty provided under the bill reflects the gravity of the risk to society caused by the dastardly users of ‘molotov cocktails’ and other popular instruments of violence.” (1970 McKinney’s Session Laws of NY, at 3145.)
At this juncture, it is helpful to set forth several definitions that enabled this court to draw its conclusions as to whether the items seized in this matter qualify as incendiary bombs:
(1) In People v McCrawford (supra, at p 319), the court gave the following definition of “Molotov Cocktail” from the Dictionary of American Slang (published by Thomas Y. Crowell, 1967): “A homemade bomb, specif., one consisting of a bottle filled with gasoline or an alcohol mixture, and usu. a rag wick” (emphasis supplied).
(2) Webster’s Third New International Dictionary Unabridged provides the following definitions:
(a) “incendiary bomb * * * a bomb that contains an incendiary agent (as jellied gasoline) and is designed to kindle fires as its objectives — called also fire bomb” (at 1141; emphasis supplied).
(b) “Kerosene * * * a flammable hydrocarbon oil that is less volatile than gasoline, that is usu. obtained by distillation of petroleum, and that is used for burning in lamps and heaters or furnaces, as a fuel or fuel component for jet engines, and as a solvent or thinner” (at 1238).
*1090 (c) “hurricane lamp * * * or hurricane lantern * * * an oil lantern having a glass chimney with a perforated metal lid that permits the egress of air but protects the flame from high winds and used usu. on shipboard and to mark outdoor construction projects — called also tornado lantern” (at 1104).
In People v Valentin (93 Misc 2d 1123), the defendant had in his possession, when arrested, a bottle containing 200 millilitres of gasoline with a twisted piece of paper in the neck of the bottle which the court found to be an “incendiary bomb” within the meaning of the statute. In rejecting defendant’s argument that an “incendiary bomb” or “incendiary device” was susceptible of application to so many flammable articles whose possession it was not intended to make a criminal offense, the court said: “The term ‘incendiary’, not being specifically defined by the Penal Law retains its everyday, commonsense meaning, bearing in mind we are dealing with a criminal statute. As stated in People v Cruz (34 NY2d 362, 370): ‘the statutory terms “incendiary”, “bomb” and “explosive substance” — are susceptible of reasonable application in accordance with the common understanding of men’ ” (supra, at p 1124).
Among the items enumerated by defendant Valentin in his argument for dismissal were a cigarette lighter, a bottle of whiskey with a paper stopper, cleaning fluid in a jar and a kerosene lantern with a cloth wick. The court found no merit to defendant’s contention that the statute was unconstitutionally vague as it applied to him under the circumstances of that case. However, by implication, the court determined that objects such as a kerosene lantern with a cloth wick are not per se incendiary bombs or devices, and that each case must be evaluated on its own merits.
It has previously been held that kerosene is a commonly used household substance and not an explosive (People v Sullivan, 39 AD2d 631) and that “lighter fluid is not an obviously dangerous weapon” (People v Morgan, 50 Mich App 288, 293, 213 NW2d 276, 278). In Fleury v Wentorf (82 Wis 2d 105, 112, 262 NW2d 68), the court stated: “The cases holding that petroleum products are not explosives have various rationales in the face of the recognized explosive quality of such products. Purcell v. Davis, 100 Mont. 480, 50 P.2d 255, 259 (1935); and Morse v. Buffalo Tank Corp., 280 N.Y. 110, 19 N.E.2d 981 (1939), held that gasoline was in such common use that to characterize it as an explosive would be unreasonable given the fact that explosives are classified as inherently dangerous substances; this would place an onerous burden on the everyday user. In People v. Sullivan, 39 A.D.2d 631, 331 N.Y.S.2d 298, 299 (1972), the court *1091 dealt with a statute which specifically exempted products such as gasoline, kerosene, naphtha, turpentine, etc., from the definition of explosives. The court held that a molotov cocktail filled with kerosene was not an explosive in spite of evidence that it would produce an explosion when thrown.” (Emphasis supplied.)
Applying the rationale of Valentin and Cruz (supra), our everyday commonsense understanding of the usage of kerosene, gasoline and hurricane lamps is that they are neither explosives nor incendiary devices. While it may be argued that any of these items or combination thereof, when improperly or illegally used, i.e., “designed to kindle fires as its objectives” or “producing an explosion when thrown”, could be found to be incendiary bombs or devices, such was not the case here.
The testimony of the circumstances surrounding the arrest of these defendants when read in conjunction with the instructions given to the Grand Jury warrants a dismissal of this indictment.
Although Penal Law § 265.02 does not require intent as an element of the crime, the jury should have been instructed with respect to circumstantial evidence which they were not. While this court does not condone the use of incendiary bombs or devices, or the transportation of flammable liquids in the trunks of vehicles, it cannot be said that the evidence was legally sufficient to sustain the charges alleged. (CPL 190.65.)
As noted above, there was no testimony that any of the defendants ever removed any of the seized items from the trunk of their vehicle, nor were they in physical possession of any weapons or anything else that could be construed as criminal at the moment they were apprehended. While it may appear obvious that this was a situation where the detectives were justified in acting quickly in order to avert a potentially dangerous event from occurring, without any additional overt acts by the defendants, and the lack of proper guidance and instruction from the District Attorney, the Grand Jury should not be given the opportunity to vote on speculation alone. Further, while the District Attorney would have this court determine that a “hurricane lamp”, kerosene and gasoline, are incendiary bombs based on the definition of “incendiary device” as it pertains to the arson statutes, should not the Grand Jury be provided the same opportunity to evaluate the evidence in that light?
Since the Grand Jury was neither instructed on any definition of “incendiary bomb” or “device” nor as to circumstantial evidence, the mere reference by a witness that possession of “a hurricane-type lantern, which to me was a fire bomb” does not make it so. This witness was not qualified as an expert to make *1092 that determination. The People did, however, present as a qualified expert a fire marshal who testified that he examined the contents of the seized items and found them to be flammable. Asked if said items would “normally” fit the type of device (incendiary bomb) that would cause a fire upon impact, he responded “yes sir. It does.”
While the court does not dispute the fire marshal’s testimony that said items “normally” fit the description he gave for an incendiary bomb, this was not conclusive of the possession of same, but an additional fact to be considered by the Grand Jury in proper perspective with the other facts and instructions. Ironically, throughout the testimony of the various witnesses there was no reference to the seized items as “molotov cocktails” but merely as “hurricane lanterns” which, as earlier stated, should be given their commonly accepted meaning and usage. (People v Valentin, supra; People v Cruz, 34 NY2d 362, supra; People v Santorelli, 95 Misc 2d 886; see, United, States v Posnjak, 457 F2d 1110.) As such, this court does not find the defendants to be in possession of either explosives or incendiary bombs.
Assuming, arguendo, that this court found the seized hurricane lamps, kerosene and gasoline, to be, in fact, incendiary bombs, it would still be compelled to dismiss the charge of reckless endangerment as to all three defendants and the criminal possession of a weapon charge as to defendants Acevedo and Concepcion for the following reasons. There was no testimony presented that the possession of these items in the trunk of the defendants’ vehicle was an act of recklessness nor was the Grand Jury instructed that transporting same is a violation of the law. (See, General Business Law § 322-b [1].) Penal Law § 265.02 does not provide for prima facie reckless endangerment where a person is in possession of the proscribed weapons, and there was no evidence adduced that defendants in any way acted “under circumstances evincing a depraved indifference to human life”. (Penal Law § 120.25.)
As to defendants Acevedo and Concepcion, they were mere passengers in the vehicle who were observed doing nothing more than exiting same when it stopped on the ramp of the 59th Street Bridge. It was incumbent upon the District Attorney to instruct the Grand Jury not only as to acting in concert as to all the charges, but as to the presumption of possession of the “incendiary bombs” by all persons occupying the automobile at the time such weapons were found. (Penal Law § 265.15 [3]; People v Cruz, supra; People v Melendez, 39 AD2d 899.)
*1093 For the foregoing reasons, the court finds that evidence was not legally sufficient to sustain the indictment and that the instructions to the Grand Jury were defective.
Accordingly, the indictment is dismissed with leave to resubmit to another Grand Jury.

 On November 10, 1983, this court held that there was sufficient legal evidence adduced to sustain the indictment. In view of the fact that the particular issue now before the court was neither raised nor dealt with in the previous motions by either the defendants or the People, the court will treat *1088 the instant motion as a motion to reargue. Accordingly, the court has reinspected the Grand Jury minutes and hereby makes a de nova determination with respect to the sufficiency of the evidence, as well as the charges presented to the Grand Jury.