NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet, this opinion is binding only on the
 parties in the case and its use in other cases is limited. R. 1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NOS. A-0698-14T3
 A-0858-14T3

SHEILA MARTELLO,

 Plaintiff-Respondent,

v.

ROBERT A. FRANCO, ESQ. and
RANDI K. FRANCO, ESQ.,

 Defendants-Appellants,

and

FRANCO & FRANCO, ATTORNEYS AT LAW,
ELLIOT H. VERNON, ESQ.,
MICHAEL KIRKOVICH, ESQ.,
TODD SIEGMEISTER, ESQ.,
CROWN FINANCIAL SOLUTIONS, LLC,
CROWN PRECIOUS METALS GROUP, LLC, and
VERDE TROPICAL DEVELOPMENT GROUP, LLC,

 Defendants.
_____________________________________________

SHEILA MARTELLO,

 Plaintiff-Respondent,

v.

ROBERT A. FRANCO, ESQ.;
RANDI K. FRANCO, ESQ.;
FRANCO & FRANCO, ATTORNEYS AT LAW,
ELLIOT H. VERNON, ESQ.,
MICHAEL KIRKOVICH, ESQ.,
CROWN FINANCIAL SOLUTIONS, LLC,
CROWN PRECIOUS METALS GROUP, LLC, and
VERDE TROPICAL DEVELOPMENT GROUP, LLC,

 Defendants,

and

TODD SIEGMEISTER,

 Defendant-Appellant.

_____________________________________________

 Argued October 24, 2017 – Decided November 14, 2017

 Before Judges Carroll and Mawla.

 On appeal from Superior Court of New Jersey,
 Law Division, Morris County, Docket No. L-
 2704-11.

 Robert A. Franco and Randi K. Franco,
 appellants in A-0698-14, argued the cause pro
 se.

 Todd Siegmeister, appellant in A-0858-14,
 argued the cause pro se.

 Geoffrey T. Bray argued the cause for
 respondent (Bray & Bray, LLC, attorneys;
 Geoffrey T. Bray, on the briefs).

PER CURIAM

 Defendants Robert A. Franco, Randi K. Franco, and Todd

Siegmeister appeal from a September 19, 2014 order enforcing two

stipulations of settlement reached with plaintiff Sheila Martello,

requiring defendants to re-pay plaintiff funds she advanced

 2 A-0698-14T3
relating to a gold venture in Africa.1 They also appeal from an

order entered the same date denying their cross-motion to vacate

the settlement agreements. These are back-to-back appeals

consolidated for the purpose of this opinion. We affirm.

 This matter commenced when plaintiff filed a Law Division

complaint asserting Robert A. Franco and Randi K. Franco committed

fraud, negligence, misappropriation, civil conspiracy to commit

fraud, and conversion. The complaint sought veil piercing remedies

against the Francos' law firm. Plaintiff also asserted: fraud,

misappropriation, civil conspiracy to commit fraud, conversion,

and piercing the corporate veil against Todd Siegmeister.

 Plaintiff claimed defendants fraudulently induced her to loan

them $785,000 for a fictitious venture. Specifically, Robert

allegedly informed plaintiff's brother, Paul Martello, "he could

make money quickly if he could find people to make a [thirty] day

loan of $200,000 to Crown Financial who would re-pay the loan plus

[twelve percent] interest and $100,000 within [thirty] days."

Robert allegedly assured Paul Martello he was part owner of Crown

Financial and that the company needed the money to finance the

shipment of gold from Africa.

1
 We will refer to Robert A. Franco and Randi K. Franco collectively
as "the Francos." As defendants share a common last name, we will
refer to them individually by their first names; no disrespect is
intended.

 3 A-0698-14T3
 Paul Martello informed Robert he thought his sister could

make the loan. Robert and Siegmeister contacted plaintiff. Robert

allegedly represented he was Crown Financial's international

general counsel, and Siegmeister its President. Robert allegedly

informed plaintiff her monetary contribution would be used to pay

the taxes, insurance, and freight for the gold transaction, and

that he would personally "ensure the payment of those expenses out

of his Law Firm's Trust Account." Plaintiff also alleges

defendants stated her investment would be insured and guaranteed

by an all-risk policy issued by Lloyd's of London.

 Plaintiff loaned defendants $200,000 on December 23, 2010,

$150,000 on January 13, 2011, $60,000 on March 7, 2011, $175,000

on April 11, 2011, $56,000 on June 3, 2011, and $144,000 on June

9, 2011. Defendants executed loan agreements and promissory notes

for the funds plaintiff provided. Plaintiff alleged these funds

were never used to pay taxes, insurance, or freight, but were

distributed from the Francos' Law Firm Trust Account to defendants.

Plaintiff also alleged her loans were not insured by Lloyd's of

London. Plaintiff was never repaid.

 On January 6, 2014, the matter was scheduled in the Law

Division for a default proof hearing. Defendants' pleadings had

previously been stricken for failing to comply with a court order

to pay an award of counsel fees and accounting fees to plaintiff.

 4 A-0698-14T3
The parties engaged in settlement discussions and plaintiff

reached two settlement agreements with defendants.

 The settlement agreement between plaintiff and Siegmeister

also resolved all claims against Michael Kirkovich, Elliot Vernon,

Crown Financial Solutions, LLC, Crown Precious Metals Group, LLC,

and Verde Tropical Development, Group LLC. The agreement with

Siegmeister required plaintiff be re-paid a total of $550,000 in

three equal installments of $183,333.33, payable on June 30,

September 30, and December 30, 2014. In exchange, plaintiff agreed

to dismiss her complaint. In the event of a default, the

settlement agreement provided plaintiff could file a motion to

seek entry of a judgment against Siegmeister, Michael Kirkovich,

Elliot Vernon, Crown Financial Solutions, LLC, Crown Precious

Metals Group, LLC, and Verde Tropical Development Group, LLC in

the amount of $900,000, less any sums paid by these defendants.

 The settlement agreement between plaintiff and the Franco

defendants provided for a payment obligation totaling $350,000,

payable in three installments of $116,670.00, due on June 30,

September 30, and December 30, 2014. The Franco settlement

agreement contained the same default provisions as the agreement

with Siegmeister, and stipulated plaintiff would be able to seek

entry of judgment in the amount of $800,000, less any payments

made by the Franco defendants.

 5 A-0698-14T3
 Neither the Francos nor Siegmeister made the June 30, 2014

payment. Consequently, plaintiff filed a motion to enter judgment

in accordance with the settlement agreements. Both Siegmeister

and the Francos opposed the motion and filed cross-motions to

invalidate the settlement agreements, claiming they were usurious,

fraudulent, and unconscionable. After oral argument, the motion

judge entered an order denying both cross-motions, and entered

judgment for plaintiff, in accordance with the settlement

agreements, for $800,000 against the Francos and $900,000 against

Siegmeister.

 On appeal, the Francos and Siegmeister argue the September

19, 2014 order entering judgment should be vacated as a matter of

law because both settlement agreements are illegal. Specifically,

defendants allege the settlement agreements are usurious and

violate N.J.S.A. 31:1-1, since the combined amount they are

obligated to pay is more than two-hundred percent of the original

loan amount. Defendants also argue the motion court should not

have enforced an illegal agreement, which contained a punitive

amount of interest. Defendants claim they are entitled to relief

by framing these arguments within Rule 4:50-1(a), (b), (c), (d)

and (f).

 6 A-0698-14T3
 I.

 We begin by reciting our standard of review. We review a

trial judge's entry of judgment pursuant to Rule 1:10-3, under an

abuse of discretion standard. Barr v. Barr, 418 N.J. Super. 18,

46 (App. Div. 2011). Generally, Rule 1:10-3 is "a civil proceeding

to coerce the defendant into compliance with the court's order."

Pasqua v. Council, 186 N.J. 127, 140 (2006) (citing Essex Cty.

Welfare Bd. v. Perkins, 135 N.J. Super. 189, 195 (App. Div.),

cert. denied, 68 N.J. 161 (1975)). In fact, a proceeding under

Rule 1:10-3 "is [the] proper tool to compel compliance with a

court order." Ridley v. Dennison, 298 N.J. Super. 373, 381 (App.

Div. 1997). As such, a trial judge's exercise of discretion will

not be disturbed absent a demonstration of an abuse of discretion

resulting in injustice. Cunningham v. Rummel, 223 N.J. Super. 15,

19 (App. Div. 1988). "An abuse of discretion 'arises when a

decision is "made without a rational explanation, inexplicably

departed from established policies, or rested on an impermissible

basis.'" Barr, supra, 58 N.J. Super. at 46 (quoting Flagg v.

Essex Cnty. Prosecutor, 171 N.J. 561 (2002)).

 II.

 Defendants argue the judgments are unenforceable because both

settlement agreements are illegal and represent a "mistake of the

exploitive amount calculated in the settlement agreement and

 7 A-0698-14T3
applied in the judgment; plaintiff and plaintiff's attorney's

fraudulent acts of fashioning a judgment which is tantamount to

criminal and civil usury; and the judgment's void nature since it

is illegal." Specifically, defendants allege the agreements are

unenforceable since they penalize defendants in the event of a

default.

 We have stated that:

 An agreement to settle a lawsuit is a contract
 which, like all contracts, may be freely
 entered into and which a court, absent a
 demonstration of "fraud or other compelling
 circumstances," should honor and enforce as
 it does other contracts. Indeed, "settlement
 of litigation ranks high in our public
 policy." Moreover, courts will not ordinarily
 inquire into the adequacy or inadequacy of the
 consideration underlying a compromise
 settlement fairly and deliberately made. . . .
 [W]here there is no showing of "artifice or
 deception, lack of independent advice, abuse
 of confidential relation, or similar indicia
 generally found in the reported instances
 where equity has declined to enforce, as
 unfair or unconscionable, an agreement
 voluntarily executed by the parties," the
 agreement should be enforced. It is only
 where the inadequacy of consideration is
 grossly shocking to the conscience of the
 court that it will interfere.

 [Pascarella v. Bruck, 190 N.J. Super. 118,
 124-25 (App. Div.) (citations omitted), cert.
 denied, 94 N.J. 600 (1983).]

Rule 4:50-1 states:

 On motion, with briefs, and upon such terms
 as are just, the court may relieve a party or

 8 A-0698-14T3
 the party's legal representative from a final
 judgment or order for the following reasons:
 (a) mistake, inadvertence, surprise, or
 excusable neglect; (b) newly discovered
 evidence which would probably alter the
 judgment or order and which by due diligence
 could not have been discovered in time to move
 for a new trial under R. 4:49; (c) fraud[,]
 . . . misrepresentation, or other misconduct
 of an adverse party; (d) the judgment or order
 is void; . . . (f) any other reason justifying
 relief from the operation of the judgment or
 order.

Generally, "[c]ourts should use Rule 4:50-1 sparingly, [and] in

exceptional situations[.]" Hous. Auth. of Morristown v. Little,

135 N.J. 274, 289 (1994). Relief under Rule 4:50-1 "is designed

to reconcile the strong interests in finality of judgments and

judicial efficiency with the equitable notion that courts should

have authority to avoid an unjust result in any given case."

Manning Eng'g, Inc. v. Hudson Cty. Park Comm'n, 74 N.J. 113, 120

(1977) (citing Hodgson v. Applegate, 31 N.J. 29, 43 (1959)).

 "The kind of mistake contemplated by [Rule 4:50-1(a)] has

been described as one in which the parties could not have protected

themselves from during the litigation." Pressler & Verniero,

Current N.J. Court Rules, cmt. 5.1.1 on R. 4:50-1 (2018); See DEG,

LLC v. Twp. of Fairfield, 198 N.J. 242, 263 (2009). Therefore,

"neither the court's nor an attorney's error as to the law or the

remedy constitutes mistake under this section." Pressler &

Verniero, supra, cmt. 5.1.1 on R. 4:50-1.

 9 A-0698-14T3
 To establish relief from a judgment based on newly discovered

evidence under Rule 4:50-1(b) the evidence must be:

 (1) [] material to the issue and not merely
 cumulative or impeaching, (2) have been
 discovered since the trial and must be such
 as by the exercise of due diligence could not
 have been discoverable prior to the expiration
 of the time for moving for a new trial; and
 (3) be of such a nature as to have been likely
 to have changed the result if a new trial had
 been granted.

 [Pressler & Verniero, Current N.J. Court
 Rules, cmt. 5.2 on R. 4:50-1 (2018).]

 Fraud, under Rule 4:50-1(c) requires proof of: "(1) a material

misrepresentation of a presently existing or past fact; (2)

knowledge or belief by the defendant of its falsity; (3) an

intention that the other person rely on it; (4) reasonable reliance

thereon by the other person; and (5) resulting damages." Banco

Popular N. Am. v. Gandi, 184 N.J. 161, 172-73 (2005) (quoting

Gennari v. Weichert Co. Realtors, 148 N.J. 582, 610 (1997)).

Fraudulent misrepresentation occurs when an individual purports

to represent a fact when it is in fact false. Jewish Ctr. of

Sussex Cty. v. Whale, 86 N.J. 619, 624 (1981). Legal fraud or

fraudulent misrepresentation must be established by clear and

convincing evidence. See Stochastic Decisions, Inc. v.

DiDomenico, 236 N.J. Super. 388, 395-96 (App. Div. 1989), certif.

denied, 121 N.J. 607 (1990).

 10 A-0698-14T3
 Under Rule 4:50-1: "No categorization can be made of the

situations which warrant redress under subsection (f). . . . [T]he

very essence of (f) is its capacity for relief in exceptional

situations. And in such exceptional cases its boundaries are as

expansive as the need to achieve equity and justice." DEG, supra,

198 N.J. at 269-71 (quoting Court Inv. Co. v. Perillo, 48 N.J.

334, 341 (1966)).

 Here, the record demonstrates the parties voluntarily entered

into two settlement agreements, whose terms were unambiguous,

including the provisions pertaining to enforcement of the

agreements in the event of a default. The agreements were reached

at arms-length, and with each party having provided consideration.

There is no evidence in the record to the contrary.

 We do not view the motion judge's enforcement of the

settlement agreements by entering judgment against defendants as

an unconscionable penalty. A settlement agreement providing for

enforcement is considered a penalty, and thus unenforceable when:

a) the penalty is designed to be a punishment for a breach of the

contract; and b) the penalty has no relation whatsoever to the

amount of damages. See Westmount Country Club v. Kameny, 82 N.J.

Super. 200, 206-07 (App. Div. 1964).

 Here, plaintiff's claims against defendants exceeded $1.7

million. She agreed to compromise those claims for $900,000, in

 11 A-0698-14T3
exchange for surety of payment under an agreed upon schedule, and

the ability to seek a $1.7 million judgment in the event of

default. Thus, the sums set forth in the settlement did not exceed

the total amount claimed in plaintiff's complaint and had a

relation to the damages plaintiff alleged.

 We reject defendants' claims the settlement agreement and

judgment enforcing them are usurious. Defendants misconstrue

N.J.S.A. 31:1-1. This statute does not apply to the settlement

agreements here because they were not loan instruments. See

Loigman v. Keim, 250 N.J. Super. 434, 437 (Law Div. 1991) ("[T]he

law of this State is consistent with the majority view that the

usury statute N.J.S.A. 31:1-1, does not apply to interest on

defaulted obligations.").

 Also, the settlement agreements do not impose an interest

rate. The motion judge explained the sums due in the event of

default encompassed the damages sought by plaintiff in her

complaint under the parties' contract, including plaintiff's

claims against defendants for misappropriation, fraud, and legal

fees. Therefore, the terms of the settlement agreements are fair

and entitled to enforcement.

 The record is devoid of a material misrepresentation by

plaintiff that defendants relied upon resulting in damages.

Indeed, defendants do not profess ignorance of the express terms

 12 A-0698-14T3
of the settlement agreements. They negotiated the agreements for

which there was a bargained for consideration. These facts do not

support a finding of mistake, fraud, or misrepresentation.

 The record lacks any evidence, other than defendants' claim

the settlement agreement was usurious, which we have rejected, to

support their arguments on the grounds of newly discovered evidence

or exceptional circumstances. Defendants do not point out what

new evidence came to light that they did not have when they entered

into the agreements. Also, because the settlement agreements were

not usurious and the order enforcing the settlement was not an

abuse of discretion, there are no exceptional circumstances

warranting relief under Rule 4:50-1(f).

 III.

 Defendants challenge the September 19, 2014 order and

reassert their arguments that they have no personal or individual

obligation to plaintiff because the loans she made were to the

corporate defendants, not the Francos or Siegmeister individually.

The record clearly demonstrates defendants acknowledged individual

responsibility for the funds provided by plaintiff by personally

obligating themselves to repay plaintiff, and in default thereof

to accept the imposition of a judgment for the unpaid amounts. We

deem this argument without sufficient merit to warrant further

discussion in a written opinion. R. 2:11-3(e)(1)(E).

 13 A-0698-14T3
 Lastly, Siegmeister argues the motion judge improperly denied

his request for an adjournment of the motion, which Siegmeister

made on the return date of the motion. We find no abuse of

discretion in this regard, and this argument also lacks merit to

warrant further discussion. R. 2:11-3(e)(1)(E).

 Affirmed.

 14 A-0698-14T3