*261 OPINION OF THE COURT
Peter E. Corning, J.
Defendants Hector Rodriguez and William Blount were inmates in New York State correctional facilities located in Cayuga County, with Rodriguez being confined at Auburn Correctional Facility and Blount being confined at Cayuga Correctional Facility. Both inmates were indicted by the Cayuga County Grand Jury on March 22, 1995 and charged with promoting prison contraband in the first degree. Defendants have made a motion to dismiss the indictments on the grounds of selective prosecution. The District Attorney has filed an affirmation in response and oral argument was heard on December 14, 1995.
FACTS
On January 9, 1994, Sergeant Valentino, a correction officer at the Auburn Correctional Facility, conducted a "pat” frisk of defendant Hector Rodriguez and a so-called "shank” was found on his person. As mentioned above, he was indicted by the Cayuga County Grand Jury on March 22, 1995 with promoting prison contraband in the first degree.
On October 19, 1994, Correction Officer Cott at the Cayuga Correctional Facility in Moravia, New York, was conducting a frisk of cells and while searching the cell of defendant William Blount found two metal rods located in his locker. As mentioned, defendant Blount was indicted by the Cayuga County Grand Jury on March 22, 1995 and charged with promoting prison contraband in the first degree. It is undisputed that 337 cases of inmates in possession of dangerous contraband occurred between January 1, 1994 and September 4, 1995.[1] Thirteen persons from that group were indicted.[2]
On March 16, 1995 the District Attorney of Cayuga County forwarded a letter to the Superintendent of the Auburn Correctional Facility stating: "we are aggressively prosecuting possession of dangerous contraband cases. In this regard, I am interested in cases that fall within the following guidelines * * * the inmate is within three and one-half years of his maximum release date * * * the foregoing are guidelines to *262 help identify those cases I am most likely to prosecute.”[3] By subsequent letter dated June 20, 1995, the Cayuga County District Attorney forwarded a letter to the Superintendent of the Auburn Correctional Facility stating that he was amending his letter of March 16, 1995 "by deleting the requirement that the inmate be within three and one-half years of his maximum release date.”[4]
CONTENTIONS
It is the contention of defendants that between January 1, 1994 and September 4, 1995 there were 337 incidents where inmates had been found in possession of dangerous contraband, but only 13 were prosecuted; that the Cayuga County District Attorney, by letter dated March 16, 1995, stated: "I am interested in cases that fall within the following guidelines [i.e.] the inmate is within three and one-half years of his maximum release date”; that the defendants were selected for prosecution as a result of their release date and that having been so selected their constitutional right to equal protection under the law was violated in that such criterion was invidious and arbitrary.
At oral argument the District Attorney candidly stated he had utilized the three and one-half-year release date as a criterion, "among others”, in connection with the defendants’ indictments, but denied that such selection based upon the release date criterion was in any way an improper exercise of the District Attorney’s discretion.[5]
THE LAW
There is a strong presumption of the legality of a prosecution of a defendant. (United States v Ojala, 544 F2d 940 [8th Cir 1976].) The party which advances a claim of discriminatory enforcement or prosecution has the burden of going forward with persuasive proof of discrimination. (People v Goodman, 31 NY2d 262 [1972]; People v Hill, 67 AD2d 427 [4th Dept 1979].) However, having exercised his discretion, the prosecutor’s ac *263 tions are subject to judicial scrutiny to determine if the discretion has been discriminatory. (People v Utica Daw’s Drug Co., 16 AD2d 12 [1962].) "Of course, any discretionary power may be abused, and unlawful discrimination in the exercise of a prosecutor’s power to charge would violate the equal protection guarantee of the Constitution.” (People v Eboli, 34 NY2d 281, 290 [1974].)
In order to prevail on the defense of discriminatory prosecution the defendants must show there was some selectivity in prosecution; that the selectivity was intentional and that the selectivity was based on some invidious or unjustifiable standard.
It is conceded that mere failure to enforce the law against other violators does not in itself establish the defense of discriminatory prosecution (People v Goodman, supra), and not all selectivity in enforcement or unequal application of the law in itself is unconstitutional absent selection deliberately based upon unjustifiable standards such as race, religion or other arbitrary classification. (See, Oyler v Boles, 368 US 448, 456 [1962].) However, in this court’s opinion, it would not be a justification to a discriminatory prosecution claim to argue that the District Attorney had used several criterion, only one of which was unlawful (i.e., based upon race, religion or other arbitrary classification).
DISCUSSION
The defense has shown there were 337 persons in Cayuga County who violated the promoting prison contraband law between January 1, 1994 and September 4, 1995. Of that total only 13 persons were prosecuted. In the opinion of this court the defense has borne its burden of showing selectivity in prosecution by virtue of those numbers. The court has considered the District Attorney’s letter, dated March 16, 1995, and his candid statement in open court that he selectively prosecuted defendants on the basis of the maximum release date (although that was not the sole criterion utilized). Accordingly, the requirement that the intent to discriminate was intentional is borne out by the statements of the District Attorney.
The remaining question is whether the selective prosecution was based on an arbitrary or invidious standard. Not all selectivity would fall within that category since some selectivity on the basis of the prosecutor is necessary (i.e., prosecution of a repeat offender would be appropriate). Whether a criterion is arbitrary is not always clear. To be sure, a prosecution based *264 upon race, religion or heritage would certainly be impermissible. The prosecution of a public official, in and of itself, is, of course, permissible; however, it is constitutionally doubtful that prosecutions limited to public officials in their last year in office would be permissible. "Although seldom defined in the context of discriminatory prosecution, an arbitrary or unjustifiable criterion is one that has no rational relationship to the purpose of the penal law allegedly violated, and the issue of whether a particular criterion is arbitrary is generally a mixed question of fact and law. One test often used to determine whether certain criteria are arbitrary or permissible is whether the legislature could have used such criteria in enacting the statute." (13 Am Jur Proof of Facts 2d, Discriminatory Enforcement, § 8, at 629.)
Applying these definitions leads me to the conclusion that a release date has no relationship to the particular crime charged, for it would be folly and nonsensical to allow a prisoner to possess contraband if he had more than three and one-half years to serve, but not otherwise. Any legislation that proscribed possession of contraband only to persons within three and one-half years of their release date would not, in my opinion, pass constitutional muster.
conclusion .
The defendants have shown to the satisfaction of the court that there were many persons who committed the crime of promoting prison contraband (337); that the prosecution has singled out but 13 for such prosecution and has intentionally used as a criterion, in the present cases, a release date within three and one-half years. Given that there has been no reasonable or rational explanation for such a criterion, this court is drawn to the inescapable conclusion that using the release date as a criterion is arbitrary and thus discriminatory.
For the foregoing reasons, the defendants’ motions to dismiss the indictments are granted.

. See defendants’ affirmation in response to motion dated December 13, 1995, exhibits A through L.

. Letter from Cayuga County District Attorney to Superintendent of Auburn Correctional Facility dated March 16, 1995 supplied by the Department of Correctional Services pursuant to subpoena duces tecum issued by this court.

. Letter of the Cayuga County District Attorney to the Superintendent of Auburn Correctional Facility dated June 20, 1995 supplied by the Department of Correctional Services as a result of the subpoena duces tecum issued by this court.

. See record of oral argument held on December 14,1995, at 31-32.